Kenneth Elwood GRAY, Appellant,

v.

STATE of Alaska, Appellee.

No. 2043.

Supreme Court of Alaska.

Aug. 12, 1974.

Frederic E. Brown, Fairbanks, for appellant.

Robert B. Downes, Asst. Dist. Atty., Fairbanks, Norman E. Gorsuch, Atty. Gen., Juneau, Monroe N. Clayton, Dist. Atty., Fairbanks, for appellee.

Before RABINOWITZ, C. J., and CONNOR, BOOCHEVER and FITZGERALD, JJ.

## OPINION

BOOCHEVER, Justice.

Kenneth Elwood Gray appeals from his conviction for selling marijuana in violation of AS 17.12.010.[1] His assignments of error pertain to the impeachment of the state's witnesses, to the denial of his motions for directed verdict and for judgment notwithstanding the verdict and to the constitutionality of AS 17.12.010.

On the evening of January 2 or the morning of January 3, 1973, Michael Boucher visited Phil Lott at the latter's residence. During the course of his visit, Boucher inquired of Lott whether Lott knew where Boucher might be able to obtain some marijuana. The two men then set out to find some. Upon arriving at 228 College Road, they were admitted by one Vaughn Williams. Lott testified that a person named "Ken or Ben" was also present at the house. He declined to identify Gray as this other person, claiming that at the time of the narcotics transaction, he was "messed up". He did concede that he knew Kenneth Gray, the defendant, and that he called him "Kenny". He also acknowledged that he had signed a sworn statement which read in part: "At the house I observed a transaction between Mike and I [sic] guy I know as Kenny". However, he asserted that the officer who had transcribed his statement had done so inaccurately, and that he had signed the statement without reading it.

 Gray contends that it was error to permit the state to impeach Boucher with his prior inconsistent sworn statement because Boucher was the state's own wit-

1. AS 17.12.010 provides:

Except as otherwise provided in this chapter, it is unlawful for a person to manufacture, compound, counterfeit, possess, have under his control, sell, prescribe, administer, dispense, give, barter, supply or distribute in any manner, a depressant, hallucinogenic or stimulant drug.

AS 17.12.152(3) defines "depressant, hallucinogenic or stimulant drug" to include cannabis. AS 17.12.152(4) defines "cannabis" as "all parts of the plant Cannabis Sativa L." with certain exceptions not material here. Marijuana is derived from the cannabis plant, or as it is more commonly called, the hemp plant.

ness. We have repeatedly rejected the wooden common law evidentiary rule that a party may not impeach its own witness,[2] and we take this opportunity to do so once again. Criminal Rule 26(a) incorporates the evidence rules of Civil Rule 43, and Civil Rule 43(g)(11)[c] provides:

A witness may be impeached by evidence that he has made at other times statements inconsistent with his present testimony. The statements must first be related to him, with the circumstances of times, places, and persons present, and the witness shall be asked whether he has made such statements and, if so, shall be allowed to explain them. If the statements are in writing, they shall be shown to the witness before he is asked any question concerning them.

The foundational requirements are, as we have frequently held, the exclusive restraint upon the use of prior inconsistent statements for impeachment.[3]

Gray next asserts that his motions for a directed verdict of acquittal and for judgment notwithstanding the verdict should have been granted. In accordance with Criminal Rule 29(a), we regard the motions as motions for judgment of acquittal.[4] In passing on such motions, the trial judge must view the evidence and reasonable inferences therefrom in the light most favorable to the state, and must deny the motion if reasonable men could differ on the question of whether guilt had been established beyond a reasonable doubt.[5] On the basis of the facts adduced in the state's case in chief, we think the trial judge properly found that reasonable men could differ on the question of guilt, and that the case should be sent to the jury.[6]

2. Beavers v. State, 492 P.2d 88, 91 (Alaska 1971); Johnston v. State, 489 P.2d 134, 137 (Alaska 1971); Hobbs v. State, 359 P.2d 956, 966 (Alaska 1961).

3. The appellant complains that such a holding permits the state to introduce a "totally falsified statement" in order to discredit unfavorable testimony by its own witness. But this potential for abuse exists whether a witness is called by the state or not. The remedy is not a wholesale exclusion of relevant and probative impeachment evidence. The intentional use of a statement known to be false would, of course, be reprehensible and would constitute gross misconduct. Even to insinuate the existence of a prior inconsistent statement when there is in fact no basis for such an implication would be prejudicial prosecutorial misconduct and such a practice could be challenged on that ground. *See* ABA Standards Relating to the Prosecution Function § 5.7(d):
 It is unprofessional conduct to ask a question which implies the existence of a factual predicate which the examiner knows he cannot support by evidence.

4. Crim.R. 29(a) provides in part:
 Motions for directed verdict shall not be used and motions for judgment of acquittal shall be used in their place.

5. Armstrong v. State, 502 P.2d 440, 443 (Alaska 1972); Bush v. State, 397 P.2d 616, 618 (Alaska 1964).

6. In addition to the facts adduced above, we note that Vaughn Williams' testimony indicated that Boucher and Lott came to the house at 228 College Road on January 3 or 4. They asked "where they could 'score' a pound". They were told they could buy a pound if they wanted to. Boucher and Lott went into the living room with Gray, Williams and another occupant of the house. They sampled some of the pound of marijuana prior to the sale. There was conversation about payment by means of a $200 check. A pound of marijuana was on the floor by the couch. Williams left the room and on returning noted that Boucher and the marijuana were gone. While Williams could not say that he actually saw Gray take the money and hand the pound to Boucher, Williams "was under the impression that that was what was going on". He understood that the pound of marijuana belonged to Kenny Gray. When Gray had shown up at the house, a large amount of marijuana "showed up", and Gray apparently brought the marijuana into the house. Williams also conceded that he had signed a sworn statement, which he read before signing, asserting that Ken Gray said that he would sell a pound of marijuana to Boucher and Lott for $200. In Beavers v. State, 492 P.2d 88 at 94 (Alaska 1971), we held that:
 The court may, in appropriate cases, allow evidence of a prior inconsistent statement to go before the jury with no instructions—that is, the court may treat it as substantive evidence. Barring abuse of discretion, the trial court's treatment of the prior inconsistent statements will be upheld by this court.

Finally, Gray forcefully argues that the statutory proscription against use and sale of marijuana constitutes an unconstitutional infringement of the right of privacy under art. I, § 22 of the Alaska Constitution. The state asserts on appeal that appellant was required to raise his constitutional challenge prior to trial, and that since he did not, he waived constitutional defenses.

█ We cannot agree with the state's contention that Criminal Rule 12(e) forecloses constitutional challenges not made prior to the date of trial. The rule provides in pertinent part that:

Failure by the defendant to raise defenses or objections or to make requests which must be made prior to trial . . . shall constitute waiver thereof.

. . .

But the matters which must be raised prior to trial are enumerated in Criminal Rule 12(b),[7] and attacks upon the constitutionality of a statute are not among them.

The state also argues that the failure to raise a constitutional defense at the pre-trial omnibus hearing constitutes a waiver. Criminal Rule 16(f)(3) provides:

All motions and other requests made prior to trial should ordinarily be reserved for and presented at the omnibus hearing unless the court otherwise directs. Subject to constitutional limitations failure to raise at the omnibus hearing any pre-trial error or issue, other than the failure of the indictment to show jurisdiction or to charge an offense, constitutes waiver of such error or issue unless the party concerned does not then possess the information necessary to raise it.

But a constitutional challenge to the statute under which the defendant was indicted[8] is clearly not such a "pre-trial error or issue", for the rule makes the failure of the indictment to show jurisdiction or to charge an offense an express exception to the issues waived.[9] Consequently, there can be no implied waiver here.

█ Although appellant's right-of-privacy contention was raised in timely fashion, we are not able to resolve the serious constitutional question thereby presented on the present state of the record. Gray correctly asserts that where a law impinges upon the constitutionally guaranteed right of privacy, the statute may be upheld only if it is necessary to further a compelling state interest.[10]

█ In the absence of an express constitutional provision, the United States Supreme Court has recognized a constitu-

---

7. Crim.R. 12(b) provides:
 (b) Any defense, objection, or request which is capable of determination without the trial of the general issue *may* be raised before trial by motion. Any or all of the following *shall* be raised prior to trial:
 (1) Defenses and objections based on defects in the institution of the prosecution;
 (2) Defenses and objections based on defects in the indictment or information (other than a failure to show jurisdiction in the court or to charge an offense, which objections shall be noticed by the court at any time during pendency of the proceeding);
 (3) Motions to suppress evidence on the ground that it was illegally obtained;
 (4) Requests for a severance of charges or defendants under Rule 14 (emphasis added).

8. The challenge to the constitutionality of the statute raises the issues of failure of the

indictment to show jurisdiction or to charge an offense. Tarnef v. State, 512 P.2d 923, 928 (Alaska 1973); Harris v. State, 457 P.2d 638, 640 (Alaska 1969).

9. Criminal Rule 16(f)(2) states in pertinent part:
 At the omnibus hearing, the trial court on its own initiative shall:

 (iv) Ascertain whether there are any procedural or constitutional issues which should be considered. . . .
 Thus, the trial judge may determine at the omnibus hearing whether defense counsel intends to raise any constitutional defenses. We have reviewed the tape of the omnibus hearing in this case, and it appears that the inquiry mandated by the rule was not made.

10. Breese v. Smith, 501 P.2d 159, 170 (Alaska 1972). *See also* Roe v. Wade, 410 U.S. 113, 155, 93 S.Ct. 705, 727, 35 L.Ed.2d 147, 178 (1973). Art. I, § 22 of the Alaska Con-

tionally protected privacy right in situations involving marriage, childbearing and the possession of pornographic materials in one's house.[11] In a case which arose prior to the adoption of Alaska's constitutional recognition of the right to privacy,[12] we held that the guarantee of liberty set forth in art. I, § 1 of the Alaska Constitution encompassed the personal right of students in public schools to select their own individual hair styles.[13] We are not confronted, however, with determining the extent of the right to privacy under the Federal Constitution or under Alaska's parallel bill of rights. In 1972 Alaska amended its constitution expressly providing that, "The right of the people to privacy is recognized and shall not be infringed." There is no available recorded history of this amendment, but clearly it shields the ingestion of food, beverages or other substances. But the right of privacy is not absolute. Where a compelling state interest is shown, the right may be held to be subordinate to express constitutional powers such as the authorization of the legislature to promote and protect public health and provide for the general welfare.[14] The state is entitled to an opportunity to present evidence that such an interest is promoted by AS 17.12.010. Since there was no evidentiary hearing below, there can be no final disposition of the case at bar at this time.[15]

Although the defendant raised an issue requiring for its resolution an evidentiary hearing, it is not clear from the record whether the defendant seeks such a hearing. In any event, we remand the case in order to afford the defendant the right to an evidentiary hearing on the issue of whether AS 17.12.010, the statute prohibiting the sale of marijuana, is necessary to further a compelling state interest.[16]

Affirmed in part and remanded.

ERWIN, J., not participating.

stitution passed subsequent to *Breese* explicitly provides:
> The right of the people to privacy is recognized and shall not be infringed. The legislature shall implement this section.

11. Roe v. Wade, 410 U.S. 113, 152–153, 93 S.Ct. 705, 726, 35 L.Ed.2d 147, 176–177 (1973) ; Eisenstadt v. Baird, 405 U.S. 438, 453, 92 S.Ct. 1029, 1038, 31 L.Ed.2d 349, 362 (1972) ; Stanley v. Georgia, 394 U.S. 557, 564, 89 S.Ct. 1243, 1247, 22 L.Ed.2d 542, 549 (1969) ; Griswold v. Connecticut, 381 U.S. 479, 485–486, 85 S.Ct. 1678, 1682, 14 L.Ed.2d 510, 515–516 (1965) ; *cf.* Skinner v. Oklahoma, 316 U.S. 535, 541, 62 S.Ct. 1110, 1113, 86 L.Ed. 1655, 1660 (1942).

12. Art. I, § 22 Alaska Constitution, approved August 22, 1972.

13. Breese v. Smith, 501 P.2d at 170.

14. Art. VII, § 4 of the Alaska Constitution provides:
> The legislature shall provide for the promotion and protection of public health.

Art. VII, § 5 of the Alaska Constitution provides:
> The legislature shall provide for public welfare.

By analogy, in *Breese* we held that the state's encroachment upon an individual's constitutional rights is justifiable only upon a showing of a compelling interest. Breese v. Smith, 501 P.2d at 170 ; *see* Roe v. Wade, 410 U.S. at 155, 163, 93 S.Ct. at 727, 731, 35 L.Ed. 2d at 178, 182–183 ; Baker v. City of Fairbanks, 471 P.2d 386, 394 (Alaska 1970).

15. Gray's contention that a compelling state interest underlying a particular statute can only be established by legislative findings of fact has no merit. The legislature need not account for the bills it passes into law. It is the responsibility of the Department of Law to defend the laws passed by the legislature against constitutional attack; and in doing so, the Department may adduce all relevant evidence and arguments, including matters which may never have been presented to or considered by the legislature in its deliberations. This has always been the framework in which constitutional adjudication takes place, and Gray has not cited any contrary authorities.

16. We recently granted a petition for review in Ravin v. State, No. 2135, a case which also challenges the constitutionality of AS 17.12.010. In *Ravin* there was a full evidentiary hearing concerning the effects of marijuana, and much expert testimony was presented. Gray may wish to request the court to hold his case in abeyance to be controlled by the result in *Ravin.*