STATE OF HAWAII, Plaintiff-Appellant*v.* THOMAS W. R. BAKER, Defendant-Appellee

NO. 5723

STATE OF HAWAII, Plaintiff-Appellant *v.* DONALD S. DIXON, Defendant-Appellee

NO. 5728

STATE OF HAWAII, Plaintiff-Appellant *v.* DAVID BOKIE EVANGELISTA, et als., Defendants-Appellees

NO. 5732

STATE OF HAWAII, Plaintiff-Appellant *v.* JEFFREY M. SCHAEFER, Defendant-Appellee

NO. 5734

and

STATE OF HAWAII, Plaintiff-Appellant *v.* TOMMY J. MITCHELL, et als., Defendants-Appellees

NO. 5737

MAY 12, 1975

RICHARDSON, C.J., KOBAYASHI, OGATA,
AND MENOR, JJ., AND RETIRED JUSTICE LEWIS
ASSIGNED BY REASON OF VACANCY

OPINION OF THE COURT BY LEWIS, J.

Each of the defendants in these consolidated cases was charged in the District Court of the First Circuit under section 1249 of the Hawaii Penal Code,[1] which reads:

---

[1] The Hawaii Penal Code, hereinafter referred to as the "Penal Code," was enacted by Act 9, S.L.H. 1972. Unless otherwise indicated, references are to section numbers in the Penal Code as set out in Act 9. The following table shows the Penal Code sections cited in this opinion, and the corresponding section numbers in the Hawaii Revised Statutes as assigned by the Revisor of Statutes.

| Penal Code | HRS |
|---|---|
| 105 | 701-105 |
| 107 | 701-107 |
| 640 and 641 | 706-640 and 641 |
| 663 | 706-663 |
| 1240 | 712-1240 |
| 1243 | 712-1243 |
| 1246 to 1249 | 712-1246 to 1249 |
| 1255 and 1256 | 712-1255 and 1256 |

Sec. 1249 —*Promoting a detrimental drug in the third degree*.

(1) A person commits the offense of promoting a detrimental drug in the third degree if he knowingly and unlawfully possesses any marijuana or any Schedule V substance in any amount.

(2) Promoting a detrimental drug in the third degree is a petty misdemeanor.

The court held the statute unconstitutional insofar as it related to the possession of marijuana with which defendants were charged, and the State appealed.[2]

The following review is necessary for comprehension of the statutory scheme.

Section 1249, promoting a detrimental drug in the third degree, is part of Part IV, chapter 12, of the Penal Code. Under Part IV, the offenses of promotion of a detrimental drug in the first degree and in the second degree[3] insofar as they relate to marijuana, apply to possession of 2.2 pounds or more (first degree) or one ounce or more (second degree) of a substance containing marijuana, distribution of two ounces or more of such a substance (first degree), distribution of marijuana in any amount to a minor who is at least three years the offender's junior (first degree), and sale of any marijuana (second degree).

It thus appears that a person who does not sell or distribute marijuana and possesses less than one ounce may be charged only with third degree under section 1249, a petty misdemeanor.[4]

---

[2] HRS § 641-13(1) (1974 Supp.).

[3] Sections 1247 and 1248.

[4] Pursuant to §§ 640(4), 641, and 663, commission of a petty misdemeanor is punishable by a fine not exceeding $500, or imprisonment not exceeding thirty days, or both. Sections 1255 and 1256 further provide that, in the case of a first offender who pleads or is found guilty of certain offenses, including the offense in question, "the court, without entering a judgment of guilt and with the consent of the accused, may defer further proceedings and place [the defendant] on probation * * * ." In that event, the proceedings are dismissed upon fulfillment of the terms and conditions of the probation, and in the case of an offender not over 20 years of age the records are expunged.

Marijuana is defined by section 1240(6) as follows:

(6) "Marijuana" means any part of the plant cannabis sativa, whether growing or not, including the seeds and the resin, and every alkaloid, salt, derivative, preparation, compound, or mixture of the plant, its seeds or resin, except that, as used herein, "marijuana" does not include hashish, tetrahydrocannabinol, and any alkaloid, salt, derivative, preparation, compound, or mixture, whether natural or synthesized, of tetrahydrocannabinol;

Each of the substances excepted by this definition is included within the definition of "marijuana concentrate," pursuant to section 1240(7). A marijuana concentrate is classified as a "harmful drug" by section 1240(2). Under Part IV, promoting a harmful drug in the third degree is a misdemeanor,[5] in contrast with the petty misdemeanor involved here.

The most serious of the offenses set out in Part IV relates to "dangerous drugs." Promoting a dangerous drug in the third degree is a Class C felony.[6] The term "dangerous drug" is defined by section 1240(1) by referring to revised HRS chapter 329 (1974 Supp.), the Uniform Controlled Substances Act, enacted by Act 10 of the 1972 session, the same session which enacted the Penal Code. This act contains five schedules of controlled substances, Schedules I and II of which relate to substances which have "the highest [or a high] degree of danger or probable danger."[7] It is these Schedule I and II substances, except marijuana and marijuana concentrates, which are classified as "dangerous drugs" for purposes of Part IV of chapter 12 of the Penal Code, above referred to. Schedule III and IV substances, with marijuana concentrates, are classified as "harmful drugs"[8] while

---

[5] Section 1246.

[6] Section 1243.

[7] HRS §§ 329-13, 329-15.

[8] Section 1240(2).

Schedule V substances, with marijuana, are treated as "detrimental drugs."[9]

As shown by the committee reports[10] on the bills which enacted the Penal Code and the Uniform Controlled Substances Act, the placing of controlled substances into several schedules in the Uniform Controlled Substances Act was complementary to the Federal Comprehensive Drug Abuse and Control Act of 1970 (Public Law 91-513, enacted October 27, 1970, effective May 10, 1971, 21 U.S.C.A. § 801 et seq.). This was done "to achieve uniformity between Hawaii's criminal and health laws and those of the Federal Government to enable government at all levels to control more effectively the drug abuse problem." The legislature integrated the schedules with the Penal Code's "approach of distinguishing the severity of offense on the basis of the amount of the substance possessed or dispensed."[11] With particular reference to marijuana it was stated:

> One area on which the Committee spent a considerable period of study was the disposition of marijuana. Your Committee finds the present sanctions in Hawaii are inconsistent with the philosophy of this Code to penalize according to the degree of social harm. Your Committee finds there is good reason to moderate present punitive statutes so that penalties are more in keeping with what is now known about the potential for abuse and social harm involved.[12]

---

[9] Section 1240(3).

[10] On H.B. 20 which became Act 9, S.L. 1972, enacting the Penal Code, see House Stand. Com. Rep. 227, 1971 House J. 784; Senate Stand. Com. Rep. 599, 1971 Sen. J. 1067; Special Committee Rep. 6 of Joint Interim Committee, 1972 Sen. J. 679; Conf. Com. Rep. 1, 1972 Sen. J. 734; Conf. Com. Rep. 2, 1972 Sen. J. 740. On S.B. 310, which became Act 10, S.L. 1972, enacting the Uniform Controlled Substances Act, see Senate Stand. Com. Rep. 527, 1971 Sen. J. 1038; House Stand. Com. Rep. 81, March 1, 1972; Conf. Com. Rep. 3, 1972 Sen. J. 746.

[11] Conf. Com. Rep. 2, 1972 Sen. J. 740, 745.

[12] Conf. Com. Rep. 2, 1972 Sen. J. 740, 746.

The District Court placed on the State the burden of showing clearly and convincingly that the possession of marijuana in violation of section 1249 constitutes a harm either to the individual or the community. It held the State had not met this burden and that section 1249 violated the due process clauses of the State and United States Constitutions. The primary question on appeal is whether the trial court's reversal of the ordinary presumption of constitutionality[13] was error.

Defendants contend that the State's interest in proscribing marijuana is "patently de minimis and does not warrant the application of a penal sanction to the mere possession of marijuana for personal use." In this argument scant attention is paid to the presumption of constitutionality.

We first consider the State's interest in proscribing marijuana. For reasons which will appear, we do not distinguish at this point between commercial distribution on the one hand, and possession for personal use, on the other. As the second part of our consideration of this matter we proceed to the question of whether the legislature was warranted in making mere possession of marijuana a petty misdemeanor, with the concomitant penal sanctions prescribed for that offense.

It is well settled that when a substance has been proscribed as harmful, the presumption of constitutionality applies although there are conflicting scientific views as to its harmful effects. This rule has been applied in marijuana cases. As stated in *United States v. Kiffer*, 477 F.2d 349 (2d Cir. 1973):

> * * * recent discussions of this issue suggest that the present state of knowledge of the effects of marihuana is still incomplete and marked by much disagreement and controversy. * * * It is true that the rationalization for the criminalization of marihuana has shifted over time. * * * This, however, does not negate the possibility that the justification now principally relied upon may have some merit. (pp. 353-354).

---

[13] State v. Cotton, 55 Haw. 148, 516 P.2d 715 (1973); Hasegawa v. Maui Pineapple Co., 52 Haw. 327, 475 P.2d 679 (1970).

* * * the question before us is a narrow one. It is whether it can fairly be said that Congress acted irrationally in prohibiting the commercial distribution of marihuana. We believe that the answer to that question is no. * * * (p. 355).

*Kiffer* considered both reports of the National Commission on Marijuana.[14] Subsequently, under the Marihuana and Health Reporting Act,[15] two further federal reports were made on this subject. The earlier of these reports states in the Introduction:

* * * Despite more recent evidence, there are still important unresolved questions. One of these concerns the implications of long-term use; another the possible interactive effects of cannabis with other drugs in widespread use. * * *[16]

The later report contains the following:

The preclinical findings of greatest interest and potential significance during the past two years have been a series of studies indicating that delta-9-THC (and possibly other marihuana constituents) have an effect upon certain basic cellular mechanisms * * *. Since this may interfere with basic biological processes, the preliminary data raise the possibility that the effects of marihuana, under some circumstances, may be more widespread in the organism than has been previously thought. * * *[17]

---

[14] Marihuana: A Signal of Misunderstanding, The Official Report of the National Commission on Marihuana and Drug Abuse (Bantam ed. 1972); Drug Use in America: Problem in Perspective, Second Report of the National Commission on Marihuana and Drug Abuse (1973).

[15] P.L. 91-296, Title V, 42 U.S.C.A. § 242.

[16] Marihuana and Health, Third Annual Report to Congress from the Secretary of Health, Education, and Welfare, DHEW Publication No. (ADM) 74-50, printed 1974, p. 1

[17] Marihuana and Health, Fourth Annual Report to Congress from The Secretary of Health, Education, and Welfare, DHEW Publication No. (ADM) 75-181, printed 1974, p. 6.

We hold, as was held in *Kiffer, supra,* that the presumption of constitutionality applies and has not been rebutted by inconclusive reports of this nature. *Accord: Blincoe v. State,* 231 Ga. 886, 204 S.E.2d 597 (1974); *United States v. Thorne,* 325 A.2d 764 (D.C. App. 1974); *United States v. Rodriquez-Camacho,* 468 F.2d 1220 (9th Cir. 1972). Accordingly, at least so far as commercial distribution is concerned, marijuana may be proscribed.[18]

While defendants have not been charged with distribution, the charge of possession under section 1249 brings before the court the question of the reasonable relation of this section to the object of the legislation as shown by the statute as a whole. It long has been established that as part of its scheme to prohibit the sale of intoxicants within its borders, a state "may adopt such measures as are reasonably appropriate or needful to render exercise of that power effective" including criminalization of mere possession of the prohibited product for personal use,[19] or manufacture of it for personal use.[20] As shown by *People v. Aguiar,* 257 Cal. App. 2d 597, 604-605, 65 Cal. Rptr. 171, 176 (1968), this principle is as sound when applied to marijuana as it was when applied to alcoholic beverages during the early days of state prohibition laws.

In holding that the State has the burden of showing "clearly and convincingly" that the prohibited activity constituted "a harm either to the individual or to the community" the court below began with the premise that: "It is a fundamental

---

[18] The Hawaii law does not place out of bounds the possibility of medical use of marijuana. See the definition of "unlawfully" in § 1240(13), set out in note 24, *infra,* and HRS § 328-16 (1974 Supp.), Hawaii Food, Drug, and Cosmetic Act. The point becomes clear upon comparison of the test for placing a controlled substance in Schedule I under the federal law, 21 U.S.C.A. § 812(b) (1), and under § 203 of the Uniform Controlled Substances Act as approved by the National Conference of Commissioners on Uniform State Laws with HRS § 329-13, Uniform Controlled Substances Act as enacted in Hawaii. As to the inclusion of marijuana in Schedule I of the Uniform Controlled Substances Act, see note 25, *infra.*

[19] Crane v. Campbell, 245 U.S. 304, 307 (1917).

[20] Mugler v. Kansas, 123 U.S. 623, 662 (1887).

right of liberty of a human being to conduct himself in a manner which neither harms himself nor others." To so approach the issue in this case is to begin with the wrong end of the stick. As stated in *Mugler v. Kansas, supra:*

> * * * And so, if, in the judgment of the legislature, the manufacture of intoxicating liquors for the maker's own use, as a beverage, would tend to cripple, if it did not defeat, the effort to guard the community against the evils attending the excessive use of such liquors, it is not for the courts, upon their views as to what is best and safest for the community, to disregard the legislative determination of that question * * *. 123 U.S. at 662.

And as stated in *Crane v. Campbell, supra:*

> We further think it clearly follows from our numerous decisions upholding prohibition legislation that the right to hold intoxicating liquors for personal use is not one of those fundamental privileges of a citizen of the United States which no State may abridge. A contrary view would be incompatible with the undoubted power to prevent manufacture, gift, sale, purchase or transportation of such articles — the only feasible ways of getting them. An assured right of possession would necessarily imply some adequate method to obtain not subject to destruction at the will of the State. 245 U.S. at 308.

More recently, in *Stanley v. Georgia*, 394 U.S. 557, 567-568 (1969), the Supreme Court of the United States considered, in an obscenity case, the proposition that "prohibition of possession * * * is a necessary incident to statutory schemes prohibiting distribution." It held that, because first amendment rights were involved in that case, mere private possession of obscene material could not be made a crime. The court carefully distinguished the type of statute which is before us, saying in footnote 11:

> What we have said in no way infringes upon the power of the State or Federal Government to make possession of other items, such as narcotics, firearms, or stolen goods, a crime. Our holding in the present case turns upon the Georgia statute's infringement of fundamental liberties protected by the First and Fourteenth Amendments. No

First Amendment rights are involved in most statutes making mere possession criminal.

We agree with the Supreme Court of Georgia that the holding in *Stanley* is inapplicable to a statute prohibiting the possession of marijuana. *Blincoe v. Georgia, supra,* 231 Ga. 886, 204 S.E.2d 597 (1974). Another recent case upholding a statute prohibiting the possession of marijuana is *United States v. Thorne, supra,* 325 A.2d 764 (D.C. App. 1974).

While our State Constitution has a right of privacy provision,[21] we do not find in that provision any intent to elevate the right of privacy to the equivalent of a first amendment right. The intention was to "effectively protect the individual's wishes for privacy as a legitimate social interest," including protection against "undue government inquiry * * * and regulation."[22] By the plain wording of the constitution the right of privacy is protected only against *unreasonable* invasion. See *State v. Rocker,* 52 Haw. 336, 344, 475 P.2d 684 (1970).

Alaska has added to its constitution, as a separate section of its bill of rights, a provision that:

The right of the people to privacy is recognized and shall not be infringed. The legislature shall implement this section.[23]

In *Gray v. State,* 525 P.2d 524, 527-528 (Alaska 1974), the Supreme Court held that under this amendment a statute which impinges upon the right of privacy "may be upheld only if it is necessary to further a compelling state interest."

---

[21] Article I, section 5:

Section 5. The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches, seizures, and invasions of privacy shall not be violated; and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized or the communications sought to be intercepted.

Defendants also rely on sections 2, 4 and 20 of the State Constitution, and the first, fourth, fifth, ninth and fourteenth amendments of the United States Constitution.

[22] Stand. Com. Rep. 55, Proceedings of the 1968 Constitutional Convention, vol. 1, pp. 233-234.

[23] Art. I, sec. 22, Alaska Constitution, approved August 22, 1972.

Reviewing a conviction for selling marijuana, the court held that the right of privacy amendment of the Alaska Constitution "clearly * * * shields the ingestion of food, beverages or other substances." After so concluding, the court placed on the prosecution the burden of showing a compelling state interest to support the statute prohibiting the *sale* of marijuana. The case was remanded for an evidentiary hearing.

Defendants place major emphasis on *Gray*. It seemingly places Alaska on the road foreshadowed in *Crane*, above quoted, *i.e.*, it recognizes the right to use marijuana as a fundamental right that extends to the distribution system itself. Under the reasoning of *Gray*, the same is true of every food, beverage or substance that may be ingested. If we so viewed the Hawaii Constitution it would take away from our food and drug laws the presumption of constitutionality and require the showing of a compelling state interest before any of them could be enforced. We find nothing in our constitution or its history that leads to that conclusion. The presumption of constitutionality applies.

In citing *United States v. Kiffer, supra,* 477 F.2d 349 (2d Cir. 1973), we are not unmindful of that portion of the opinion which considers the "argument * * * that in the absence of compelling justification, the police power does not extend so far as to permit the Government to protect an individual against himself and that the concern for public health and safety is relevant only insofar as the actions of one individual may threaten the well-being of others." (477 F.2d at 354.) After pointing out that prohibition of private possession and use was not before it, the court reached the pertinent conclusion that "such an argument does not undermine the authority of the Government to prevent some from aiding or inducing others to commit acts detrimental to their own health," with which we agree. As to the issue of private possession and use, the court intimated no view, but called attention to a number of cases upholding laws prohibiting possession for personal use, and one, *People v. Sinclair,* 387 Mich. 91, 194 N.W.2d 878 (1972) invalidating such a law. In *Sinclair,* there were separate opinions, without consensus on the ground of invalidation. Only the opinion of T. G. Kavanagh, J., touched.

on the issue before us, the justice concluding that: "Whatever the validity of the concept that *traffic* in marijuana is freighted with a proper public interest, it is extending the concept entirely too far to sanction proscription of possession and private use of it." (387 Mich. at 133, 194 N.W.2d at 896). With all respect, we do not agree. And the holding in our own case of *State v. Kantner*, 53 Haw. 327, 493 P.2d 306 (1972), is not a precedent here, because the only issue in *Kantner* was whether the legislature could include marijuana in the definition of a "narcotic drug," it being conceded in that case that the State may properly regulate the possession of marijuana under the police power.

We hold that a statute proscribing the commercial distribution of harmful substances may sweep within its ambit, as an enforcement measure, the possession of the substance for personal use. That section 1249 is such an enforcement measure is made abundantly clear by the provision limiting the offense to *unlawful* possession.[24] And since the issue here is the possession of contraband, *State v. Cotton*, 55 Haw. 138, 516 P.2d 709 (1973), *State v. Cotton, supra*, 55 Haw. 148, 516 P.2d 715 (1973), and *State v. Lee*, 51 Haw. 516, 465 P.2d 573 (1970), the motorcycle helmet and goggle cases, are inapplicable.

The decision of the court below is not supported by cases such as *Griswold v. Connecticut*, 381 U.S. 479 (1965), and *Eisenstadt v. Baird*, 405 U.S. 438 (1972). In those cases, involving contraceptives, the statutes struck down had as their object the dictating of the lifestyle of the individual, not the prevention of harm. *Breese v. Smith*, 501 P.2d 159, 170 (Alaska 1972), cited in *Gray*, concerned a statute of that nature — long hair in the public schools was the issue.

---

[24] "Unlawfully" is defined by section 1240(13). The definition reads:
(13) "Unlawfully" means:

(a) To possess or distribute a Schedule I, II, III, IV or V substance, a marijuana concentrate, marijuana, or intoxicating compound, when not authorized by law to do so by an apothecary, physician, dentist, podiatrist, practitioner, or veterinarian; or

(b) To receive and possess a Schedule I, II, III, IV or V substance, a marijuana concentrate, marijuana, or intoxicating compound, from sources unauthorized by the law to distribute such substances.

In *Roe v. Wade,* 410 U.S. 113 (1973), *Griswold* and *Eisenstadt* were distinguished on the ground that, despite the right of privacy, at some point in a woman's pregnancy the State has a dominant interest in the health of the mother and in the potential human life involved. Recognizing as a fundamental but not unlimited right the woman's prerogative to make the abortion decision, the Court upheld the District Court's holding that the appellee had not shown a compelling state interest in the case before the Court. Defendants cite this case in support of their contention that the State must show a compelling interest here, but we deem it inapplicable. As stated by the Court in reference to a woman's decision whether or not to terminate her pregnancy: "The detriment that the State would impose upon the pregnant woman by denying this choice altogether is apparent." The detriment which the Court had in view was shown by listing of a number of factors, the Court then concluding: "All these are factors the woman and her responsible physician necessarily will consider in consultation." (410 U.S. at 153).

In this opinion we pass only on section 1249, read as a part of chapter 12, Part IV, of the Hawaii Penal Code. It is evident that marijuana, though included in Schedule I(d) of HRS § 329-14, part of the Uniform Controlled Substances Act enacted by Act 10, S.L.H. 1972, was so included because of the desire to achieve uniformity with the federal law.[25] It has not been treated as a Schedule I substance in the Penal Code.

By their argument that marijuana is "patently de minimis" defendants in reality urge this court to second-guess the legislature, which as shown by the committee reports on Act 9, S.L.H. 1972[26] considered making an offense

---

[25] The inclusion of marijuana in Schedule I of the federal law has been questioned. See United States v. Kiffer, *supra,* 477 F.2d 349 (2d Cir. 1973); National Organization for the Reform of Marijuana Laws v. Ingersoll, 497 F.2d 654 (D.C. Cir. 1974). These citations show that there may be international aspects. Marijuana remains in Schedule I at this writing. Code of Federal Regulations, Title 21, § 1308.11, Schedule I(d), which last was republished in vol. 39, Federal Register at p. 22142, June 20, 1974.

[26] Note 10, *supra.*

under section 1249 a mere violation[27] but finally concluded that it should be a petty misdemeanor[28] as recommended by the Judicial Council's draft, which was the basis of the Penal Code.[29] There is no question here of cruel and unusual punishment.[30] It was within the prerogative of the legislature to make the decision that possession of marijuana should not be decriminalized. Part IV of chapter 12 of the Penal Code represents a carefully considered program for the control of the substances there identified, and we find no warrant for judicial interference in this case.[31]

Reversed and remanded for further proceedings.

*Charlotte Libman,* Deputy Prosecuting Attorney *(Barry Chung,* Prosecuting Attorney with her on the briefs) for plaintiff-appellant.

*Chris Peterson,* Deputy Public Defender *(Donald K. Tsukiyama,* Public Defender with him on the brief) for defendants-appellees.

CONCURRING AND DISSENTING OPINION
OF KOBAYASHI, J.

I concur with the majority that the trial court erred in disregarding the presumption of constitutionality of the sta-

---

[27] Section 107(5) provides that:
* * * A violation does not constitute a crime * * *.
Pursuant to § 640(4), a violation carries a maximum fine of $500.

[28] See note 4, *supra.*

[29] See § 105.

[30] See United States v. Thorne, *supra,* 325 A.2d 764 (D.C. App. 1974).

[31] We note that the National Conference of Commissioners on Uniform State Laws in 1973 revised the Uniform Controlled Substances Act, which was the basis of HRS chapter 329 (1974 Supp.), by adding a new section 409 decriminalizing "possession of marihuana by an individual for personal use" as well as distribution of small amounts of marijuana under certain circumstances. Uniform Laws Annotated, Master ed., vol. 9 (1975 Supp., pp. 78-79). As shown by the report this was done to "implement the recommendations of the National Commission on Marihuana and Drug Abuse * * * ." (See the reports of this Commission cited *supra,* note 14). Of course, arguments along this line should be addressed to the legislature.

tute in question.

However, in my opinion, the real question is whether, on the record, the appellee adduced evidence showing that the substantive provisions of the statute are arbitrary and capricious and void under the due process clause of the Hawaii State Constitution and the Constitution of the United States.

In the trial below the appellee filed a motion to dismiss the charge filed against him and contended:

1. The statute is unconstitutional on the ground of unlawful assertion of police power.

2. The statute violates the constitutional guarantee of privacy.

In support of the first contention the appellee stated:

The present state of scientific knowledge indicates that marijuana use has no effects on the individual that leads directly to harm to others. At most it can be argued that possession of marijuana is harmful to the possessor. Even assuming arguendo that possession of marijuana is harmful for the possessor, it cannot be statistically demonstrated by the [State] that the consequent physical injury is so widespread as to be of such grave concern to the public as to affect the public interest generally. . . . (*See State v. Lee,* 51 Haw. 516, 521, 465 P.2d 573, 577 (1970) for appropriate test).

In support of the second contention, the appellee argued:

The right to personal privacy . . . [is] a fundamental substantive constitutional right. . . . *Griswold v. Connecticut,* 381 U.S. 479 (1965); [t]he use of marijuana is a private act which is protected by this substantive right to privacy; [t]he actual use of marijuana involves no one other than the user. . . .

Together with his motion to dismiss, the appellee filed certain exhibits entitled:

1. R. Cowan, *American Conservatives Should Revise Their Position on Marijuana,* National Review, December 8, 1972;

2. *Marihuana and Health,* Third Annual Report to the U.S. Congress from The Secretary of Health, Education, and Welfare, DHEW Publication No. (ADM) 74-50, 1974.

Mr. Cowan, in his article, asserted as follows:[1]

1. Marijuana is non-addictive;

2. The use of marijuana does not in itself lead to the use of heroin;

3. No one has ever died from an overdose of marijuana;

4. Marijuana, used in moderation, causes no identified physical or mental problems for individuals who are otherwise healthy;

5. Marijuana does not induce criminal behavior or sexual aberration. In fact, it tends in most users to inhibit violence;

6. Marijuana, in moderate use, has little effect on the driving ability of experienced users of it — the contrast with socially equivalent alcohol consumption is to the disadvantage of alcohol;

7. Long-term abuse (gross overuse) should be assumed to be harmful but in fact there is as yet no conclusive evidence to that effect;

8. The moderate use of marijuana does not lead to changes in social behavior or to a loss of motivation;

9. Twenty-five million people use or have used marijuana.

The Secretary of Health, Education, and Welfare made, *inter alia,* the following pertinent observations and statements in his report:

1. Recent estimates indicate that about 24 million persons have ever used cannabis. It should be emphasized that over half of those who have ever used have only experimented with the drug. Probably not more than one in twenty uses [the drug] on a daily basis.

2. Certain patterns of related drug use have been found. Most characteristic is the use of alcohol and tobacco prior to and concurrently with marihuana use. Among college populations the drugs used, from the most to least frequently, are: beer, wine, hard liquor, lower potency marihuana, high potency marihuana and hashish followed in diminishing frequency by LSD and other drugs. Heroin use in this group is extremely uncommon.

---

[1] *See also* E. BRECHER and Editors of Consumer Reports, LICIT & ILLICIT DRUGS, Part VIII (1972).

3. Not too surprisingly, drug use by children is related to drug use by parents. When both parents use drugs such as alcohol, tobacco and other psycho-active drugs, there is a greater likelihood that their children will use marihuana.

4. In view of the continuing debate on the relative toxicity of alcohol and marihuana, it was of interest to investigate the effect of marihuana on the vestibular system which plays an important role in maintaining the equilibrium of the body. As it is well known, alcohol and several other drugs can produce serious impairment of this system resulting in ataxia and a loss of equilibrium.

Vestibular function tests show that the use of marihuana indicates no significant effect on the vestibular functions. Other tests, such as reaction time, visually evoked responses and sleep patterns on continuous EEG showed no drug-related changes.

5. A deficit in short-term memory has been clearly demonstrated in all of the studies.

6. Evidence is accumulating more clearly indicating that more complex tasks may be detrimentally affected by marihuana.

7. Despite the many effects of chronic cannabis use that have been suggested, attention during the past year has focused on a small number of these where there is still some controversy or evidence of a positive effect.

8. Speculation about chronic effects on the renal and cardiovascular systems have little hard evidence at this time to support them.

9. Whether there are long-term effects from cannabis, such as the increased incidence of lung cancer associated with tobacco, is entirely unknown at this time.

10. The existence of brain damage to chronic cannabis use is still an area of controversy. Definitive conclusions regarding cannabis use and possible brain damage cannot be reached at this time.

11. In general, there continues to be little evidence to suggest that light or occasional use of cannabis has serious deleterious physical effects.

12. At the present time there continues to be little evi-

dence that cannabis has either a significant teratogenic effect or have any significant effect on chromosome breakage.

13. Case reports of death from cannabis overdose continue to be extremely infrequent. Evidence from animal toxicity studies indicates that the ratio of lethal dose of cannabis to psychologically effective dose is very large and is much more favorable than that of drugs such as alcohol and many common over-the-counter drugs.

14. Although in the past isolated reports have associated marihuana with exacerbations of certain illnesses such as epilepsy and diabetes, a causal role has not been established and thus far the deleterious effect of marihuana in these illnesses has not been confirmed.

15. Although cannabis has been claimed to be a cause of chronic psychosis and an amotivational syndrome, there appears to be little well-controlled evidence to support this.[2]

In contrast, with the minimum but controversial findings of possible harm to the individual in the use of marijuana, and of the total lack of findings that marijuana use would cause the user to directly or indirectly harm others, the proof of the harmful effects of two publicly accepted drugs — alcohol and tobacco — is well documented.

The harmful effects of alcohol are numerous:[3]

1. Alcohol addiction is second only to nicotine addiction in incidence and prevalence in the United States; a conservative estimate is that five million Americans are alcoholics.

2. Alcohol is utterly destructive to the human mind; among 70,000 first admissions of males to state mental hospitals in 1964, more than 15,000 were given a diagnosis of alcoholism at the time of admission.

3. Alcohol is similarly destructive of the human being; thousands of heavy drinkers are threatened with death each year by cirrhosis of the liver.[4]

---

[2] *See* E. Brecher and the Editors of Consumer Reports, *Marijuana: The Health Questions*, Consumer Reports (March 1975).

[3] *See* E. BRECHER and Editors of Consumer Reports, LICIT & ILLICIT DRUGS, Part IV, ch. 32 (1972).

[4] *See Liver Cirrhosis "Cure" Seen*, The Honolulu Advertiser, March 25, 1975.

4. Alcohol is by a wide margin the biggest law-enforcement problem (public drunkenness, disorderly conduct, driving while intoxicated). In 1965, out of close to five million arrests in the United States for all offenses, over 1,535,000 were for public drunkenness. In addition, there were over 250,000 arrests for driving while intoxicated. Another 490,000 individuals were charged with disorderly conduct.

5. Homicide is also an alcohol-related crime.

6. Alcohol is a significant factor in the "battered child syndrome". In a high proportion of cases in which a parent beats his young child so severely that hospitalization is required or that death ensues, the parent is drunk at the time.

Tobacco is one of the most physiologically damaging substances used by man.[5]

1. When smoked in cigarettes it is the chief cause of lung cancer.

2. Tobacco is also a factor in other cancers, in coronary artery disease, in emphysema of the lungs, and in other diseases.

3. Nicotine, contained in tobacco, is one of the most perniciously addicting drugs in common use.

History shows that nation after nation, and several states in the United States tried to curb the use of tobacco by criminalizing the cultivation, possession and use of tobacco. However, criminalization had no effect in reducing and/or eliminating the use of tobacco. Record shows that tobacco acquired a greater number of addicts,[6] notwithstanding the penal consequences.

The history of the criminalization of the production, distribution, and consumption of alcohol is well documented in the tragic period of the prohibition era of 1920-1933.[7] Alcohol

---

[5] E. BRECHER and Editors of Consumer Reports, LICIT & ILLICIT DRUGS, Part III, chs. 23-26 (1972).

[6] E. BRECHER and Editors of Consumer Reports, LICIT & ILLICIT DRUGS, Part III (1972).

[7] Id. Part IV.

prohibition was not repealed because alcohol is a harmless drug. Prohibition was repealed because it failed to discourage the consumers of alcohol, and, it created a monster in the form of organized crime syndicates controlling distribution of alcohol with its attendant violence.

Upon consideration of the record, notwithstanding *United States v. Kiffer*, 477 F.2d 349 (2d Cir. 1973) cited by the majority of the court, I am compelled to conclude that the statute in question constitutes an arbitrary and capricious exercise of police powers by the appellant. I premise my opinion on the following reasons:

1. There is no conclusive proof that marijuana is a detrimental drug;

2. There is no proof that mere possession of marijuana harms the individual possessor;

3. There is no proof that mere possession of marijuana would cause the possessor to directly harm others;

4. Any possible harm to the individual in the use of marijuana is merely debatable;

5. There is no proof that marihuana use leads the user to harm others;

6. It cannot be statistically demonstrated that the consequent physical and/or mental injury through the use of marijuana is so widespread as to affect the public interest generally;

7. Marijuana has not been proven to be an addictive drug;

8. There is no evidence of any secondary harm to society resulting from any harm to the user of marijuana.

I am of the further opinion that the imposition of criminal penalties for the possession of marijuana is irrational and oppressive and, also fails to accomplish the purpose of discouraging the individual possession of marijuana.

In *State v. Cotton*, 55 Haw. 138, 516 P.2d 709 (1973), the court stated at 139, 516 P.2d at 710:

> We accept . . . the fundamental tenet that the relationship between the individual and the state leaves no room for regulations which have as their purpose and effect *solely* the protection of the individual . . . .

The proscription of possessing marijuana is, at best, solely to protect the individual user of marijuana.

In my opinion, however, the real purpose of the criminalization of possession of marijuana is simply to perpetuate society's (majority of) prejudice against marijuana; a prejudice which I believe is based mainly upon inaccurate information. Clearly, the only confirmed harm of marijuana is, not in marijuana per se, but the laws which criminalizes the possessor. The lives and careers of many thousands of possessors have been damaged or destroyed irrationally and oppressively. The interest of society generally has been seriously harmed by the unnecessary criminalization of a large segment of the people. Organized crime or crimes have been fostered by the act of the appellant in proscribing the possession of marijuana.[8]

In the exercise of appellant's police powers, the law is clear:

> To justify the State in [thus] interposing its authority in behalf of the public, it must appear, first, that the interests of the public [generally, as distinguished from those of a particular class] require such interference; and, second, that the means are reasonably necessary for the accomplishment of the purpose, and not unduly oppressive upon individuals. . . .

*Goldblatt v. Hempstead,* 369 U.S. 590, 594-95 (1962); *Lawton v. Steele,* 152 U.S. 133, 137 (1894).

In my opinion the statute prohibiting the possession of marijuana fails to meet the above test. Mere debatable possible harm of marijuana on the individual user does not justify the appellant in interposing its authority in behalf of the public. Assuming arguendo justification exists in proscribing the possession of marijuana, the means used to discourage the individual possession of marijuana is not reasonably necessary. The means used has not only failed to accomplish the purpose but is irrational and unduly oppressive upon the individual marijuana users.

---

[8] Hunter, Sunday Star-Bulletin & Advertiser, July 25, 1971, § A, at 1. *But see* Honolulu Advertiser, July 26, 1971, § A, at 1. For effects of criminal sanctions, generally, see H. PACKER, THE LIMITS OF THE CRIMINAL SANCTION, 270-282 (1968).

It is ironic, indeed, that the inexplicable moral code of the majority of society accords the stamp of moral approval of two of the most harmful drugs — tobacco and alcohol — by permitting the cultivation or manufacture, the distribution, and the general use thereof, without criminal penalties, except in extreme specific instances. Yet, in the case of marijuana, where there is no conclusive proof of its harmful effects, and where the possible harm is merely debatable, and further where there is no evidence showing that marijuana use or possession thereof causes the user or possessor to harm others, the state totally proscribes, with criminal penalties, the mere possession of marijuana.

I would affirm the result of the trial court's judgment for the reasons stated.

