ILLINOIS NORML, INC., *et al.*, Plaintiffs-Appellants, *v.* WILLIAM J. SCOTT, Attorney General, *et al.*, Defendants-Appellees.

First District (4th Division)   No. 76-1082

Opinion filed November 16, 1978.

Thomas P. Sullivan, Robert A. Spanner, and Eugene R. Wedoff, all of Chicago (Jenner & Block, of counsel), for appellants.

William J. Scott, Attorney General, of Chicago, *pro se* (James B. Zagel, Jayne A. Carr, Melbourne A. Noel, Jr., and George C. Sorensen, Assistant Attorneys General, E. James Gildea, and Steven Towbin, of counsel), for appellees.

Mr. JUSTICE ROMITI delivered the opinion of the court:

Plaintiffs brought this action for a declaratory judgment that the Cannabis Control Act (Ill. Rev. Stat. 1975, ch. 56½, par. 701 *et seq.*) is unconstitutional insofar as it applies to the private possession and use of cannabis by adults and for injunctive relief to prevent enforcement of the statutes as to such activities. Upon defendants' motions the trial court dismissed the complaint and plaintiffs brought this appeal.

The issues on appeal are: (1) whether the right to privacy, as guaranteed by the United States and Illinois constitutions, encompasses a right to private possession and use of cannabis by adults; (2) whether the trial court properly took judicial notice of the existence of differing scientific opinions as to the harmfulness of cannabis use; (3) whether plaintiffs should have been permitted to file an amended complaint; (4) whether the challenged statutes constitute a valid exercise of the police power; (5) whether the criminal penalties provided for the private possession and use of cannabis constitute cruel and unusual punishment; (6) whether State prohibition of the private use of cannabis but not the private use of alcohol and tobacco violates the constitutional guarantee of equal protection.

We affirm the judgment of the trial court.

I.

■■ Plaintiffs assert that the private use and possession of cannabis is protected by the constitutional right of privacy. However, this right of privacy has only been recognized by the United States Supreme Court in connection with certain *fundamental* rights. Thus in *Griswold v. Connecticut* (1965), 381 U.S. 479, 14 L. Ed. 2d 510, 85 S. Ct. 1678, a law forbidding the use of contraceptives was held to infringe on the marriage relationship, an area found to be within the zone of privacy created by fundamental constitutional guarantees, including the right of association emanating from the First Amendment. Subsequently this right of privacy was also recognized in connection with laws affecting the individual's decision concerning procreation (*Eisenstadt v. Baird* (1972), 405 U.S. 438, 31 L. Ed. 2d 349, 92 S. Ct. 1029 (striking down a Massachusetts law permitting distribution of contraceptives only to married people)), and

whether to terminate a pregnancy (*Roe v. Wade* (1973), 410 U.S. 113, 35 L. Ed. 2d 147, 93 S. Ct. 705). In *Stanley v. Georgia* (1969), 394 U.S. 557, 22 L. Ed. 2d 542, 89 S. Ct. 1243, the court held that the private possession of obscenity in the home was protected by the right to privacy. Plaintiffs misconstrue this opinion, placing sole emphasis on the home-use aspect of the case. Analysis of *Stanley* reveals that the right to privacy there was found in the nexus of the First Amendment right to receive information and ideas and the fact that enforcement of the challenged statute would uphold an intrusion into the home with respect to this right. In the case of laws prohibiting private possession and use of cannabis the home intrusion aspect may arguably be present, but there is no threat to a substantive right analogous to the First Amendment right discussed in *Stanley* or the important marital and procreative rights protected in *Roe*, *Eisenstadt*, and *Griswold*. There is no fundamental right to use cannabis (*State v. Kantner* (1972), 53 Haw. 327, 493 P.2d 306, *cert. denied* (1972), 409 U.S. 948, 34 L. Ed. 2d 218, 93 S. Ct. 287), nor do plaintiffs assert such an unqualified right. The mere fact that this otherwise unprotected activity is conducted in the home does not, in itself, place it in the protected zone of the constitutional right of privacy. Indeed, the court in *Stanley* stated:

> "What we have said in no way infringes upon the power of the State or Federal Government to make possession of other items, such as narcotics, firearms, or stolen goods, a crime. Our holding in the present case turns upon the Georgia statute's infringement of fundamental liberties protected by the First and Fourteenth Amendments. No First Amendment rights are involved in most statutes making mere possession criminal." (394 U.S. 557, 568 n.11, 22 L. Ed. 2d 542, 551 n.11, 89 S. Ct. 1243, 1249-50 n.11.)

We hold that the Federal constitutional right of privacy does not extend to the use and possession of cannabis in the home. *State v. Kells* (1977), 199 Neb. 374, 259 N.W.2d 19; *State v. Baker* (1975), 56 Haw. 271, 535 P.2d 1394; *State v. Murphy* (1977), 117 Ariz. 57, 570 P.2d 1070; *Commonwealth v. Leis* (1969), 355 Mass. 189, 243 N.E.2d 898.

■■ Nor do we believe that the reference to invasions of privacy found in the Illinois Constitution provides protection for the activities at issue. That reference is contained in section 6 of article I, which states:

> "The people shall have the right to be secure in their persons, houses, papers and other possessions against unreasonable searches, seizures, invasions of privacy or interceptions of communications by eavesdropping devices or other means. No warrant shall issue without probable cause, supported by affidavit, particularly describing the place to be searched and the persons or things to be seized." (Ill. Const. 1970, art. I, §6.)

The Illinois Supreme Court initially construed this provision as creating an independent constitutional right of privacy. (*Stein v. Howlett* (1972), 52 Ill. 2d 570, 289 N.E.2d 409, *appeal dismissed* (1973), 412 U.S. 925, 37 L. Ed. 2d 152, 93 S. Ct. 2750.) However that construction was greatly modified in *Illinois State Employees Association v. Walker* (1974), 57 Ill. 2d 512, 315 N.E.2d 9, *cert. denied* (1974), 419 U.S. 1058, 42 L. Ed. 2d 656, 95 S. Ct. 642. The analysis of the court is useful:

> "The changes from the Constitution of 1870 are first, that the word 'possessions' is substituted for the word 'effects,' and second, that the phrase 'invasions of privacy or interceptions of communications by eavesdropping devices or other means' is added to the protections against unreasonable searches and seizures. As the section was initially reported to the Constitutional Convention by its Bill of Rights Committee, an argument could have been made that it established an independent right of privacy rooted in the State Constitution, apart from or in addition to the common law right of privacy recognized in Leopold v. Levin (1970), 45 Ill. 2d 434, 259 N.E.2d 250. During its progress through the Constitutional Convention, however, the provision was altered so that as submitted to and approved by the people it was restricted in the manner indicated above. The original form of the provision, together with added material shown by underscoring and stricken material by printing and striking, was as follows:
>
>> 'The people shall have the right of the people to be secure in their persons, houses, papers and other possessions against unreasonable searches, seizures, invasions of privacy or interceptions of their communications by eavesdropping devices or other means, or invasions of their privacy shall not be violated, and No warrant shall issue without probable cause, supported by affidavit, particularly describing the place to be searched, and the persons or things to be seized.' (6 Record of Proceedings, Sixth Illinois Constitutional Convention 210 (hereafter Proceedings).)
>
> Not all members of the court are convinced that this provision should be interpreted as asserting anything beyond protection from invasions of privacy by eavesdropping devices or other means of interception." (57 Ill. 2d 512, 522-523, 315 N.E.2d 9, 14-15.)

Justice Ryan dissented, expressing his view that even as amended this provision created a right of privacy independent of the prohibition against unreasonable searches and seizures and wiretapping. But the majority did not rely solely on the analysis we have cited; they held more narrowly that the provision established no right of privacy

restricting governmental requirements of disclosure of economic interests by State officers and employees. Similarly, we need not determine whether an independent State constitutional right of privacy was created by section 2, for we find no support for plaintiffs' contention that such a right would shelter from criminalization the private possession and use of cannabis. Only in Alaska has a State constitutional privacy provision been so construed (*Ravin v. State* (Alas. 1975), 537 P.2d 494), and the constitutional language at issue there was unequivocal:

> "The right of the people to privacy is recognized and shall not be infringed. The legislature shall implement this section." (Alas. Const., art. I, §22.)

Our constitutional language, with its reference to unreasonable invasions of privacy, is very similar to that of Hawaii:

> "The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches, seizures, and invasions of privacy shall not be violated; and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and persons or things to be seized or the communications sought to be intercepted." (Haw. Const., art. I, §5.)

And the Hawaii Supreme Court has refused to construe this language as providing protection for possession of cannabis. (*State v. Baker* (1975), 56 Haw. 271, 535 P.2d 1394; also see *State v. Murphy* (1977), 117 Ariz. 57, 570 P.2d 1070.) We conclude that the private use and possession of cannabis is not protected by any right to privacy arising out of the Illinois Constitution.

## II.

■■■ The remainder of the challenges plaintiffs assert have in common the factual premise that cannabis use is harmless. Plaintiffs contend on appeal that the trial judge improperly took judicial notice that cannabis use is harmful, denying them the opportunity to establish the contrary by presenting evidence on the question. But in fact the trial judge took judicial notice that there exists scientific evidence supporting and refuting this factual contention. We are considering the validity of legislation in which it is declared:

> "The General Assembly recognizes that * * * the current state of scientific and medical knowledge concerning the effects of cannabis makes it necessary to acknowledge the physical, psychological and sociological damage which is incumbent upon its use * * *." (Ill. Rev. Stat. 1975, ch. 56½, par. 701.)

The test for judicial review of such legislation is well set out in *United States v. Carolene Products Co.* (1938), 304 U.S. 144, 153-54, 82 L. Ed. 1234, 1242-43, 58 S. Ct. 778, 784-85:

"Where the existence of a rational basis for legislation whose constitutionality is attacked depends upon facts beyond the sphere of judicial notice, such facts may properly be made the subject of judicial inquiry * * *. * * * But by their very nature such inquiries, where the legislative judgment is drawn in question, must be restricted to the issue whether any state of facts either known or which could reasonably be assumed affords support for it. Here the demurrer challenges the validity of the statute on its face and it is evident from all the considerations presented to Congress, and those of which we may take judicial notice, that the question is at least debatable * * *. As that decision was for Congress, neither the finding of a court arrived at by weighing the evidence, nor the verdict of a jury can be substituted for it." (Citations omitted.)

The trial judge took judicial notice of a scientific dispute on the issue of the harmfulness of cannabis use. Where, as here, the issue is whether there was a rational basis for the legislation, the existence of scientific evidence supporting such legislation, even though disputed by other studies, provides that rational basis and the legislation should be upheld. It is not the function of the judiciary to pass on the wisdom of such legislation, so long as there is a rational basis for it. *People v. Aguiar* (1968), 257 Cal. App. 2d 597, 65 Cal. Rptr. 171, *cert. denied* (1968), 393 U.S. 970, 21 L. Ed. 2d 383, 89 S. Ct. 411; *Commonwealth v. Leis* (1969), 355 Mass. 189, 200, 243 N.E.2d 898, 906 (concurring opinion).[1]

### III.

■■ After the trial judge issued his memorandum opinion, plaintiffs sought to amend their complaint, specifically denying that cannabis use had the harmful effects found in the studies cited by the trial judge, and alleging that "[a]ll studies to the contrary can be shown to be methodologically faulty or biased in interpretation." But these amendments would not have affected the disposition of this case. Indeed, the reference to such studies supports the conclusion of the trial court that a scientific dispute existed on the question of the harmfulness of cannabis. The proper forum for the refutation of such studies would be the legislature. As was stated in *Aguiar*, where the court judicially noticed scientific opinion supporting and contradicting the thesis that cannabis use was harmful:

"Under this state of affairs it is not for this court to weigh fact-finding studies against each other. This is a legislative function and we leave it to the Legislature to determine whether in its wisdom a

---

[1] We have reviewed two recent trial court decisions cited by plaintiffs on oral argument, in which judicial review of such studies was deemed appropriate, and we do not find them persuasive. *State v. Leigh,* No. 77-267 (Cir. Ct. of the 11th Judicial Cir. of Fla., filed January 18, 1978), ___ Fla. Supp. ___; *National Organization for the Reform of Marijuana Laws v. Cullinane,* No. 73-1897 (D.D.C., filed January 11, 1978), ___ F. Supp. ___, (order denying defendants' motion for judgment on the pleadings).

change in or repeal of existing laws is warranted." (257 Cal. App. 2d 597, 603, 65 Cal. Rptr. 171, 175.)

For this reason the trial court did not err in refusing to allow plaintiffs to amend their complaint.

## IV.

■■ Plaintiffs contend that the legislature exceeded its authority under the police power when it criminalized the private possession and use of cannabis. To the extent that this contention is based on the absence of any harm from such use, our determination of the propriety of the trial judge's use of judicial notice concerning the question resolves the matter. However, plaintiffs also contend that the legislation is in excess of the police power because the claimed harm to the individual does not confer police-power authority to ban usage so long as society itself is not adversely affected, citing *People v. Fries* (1969), 42 Ill. 2d 446, 250 N.E.2d 149. The legislation invalidated in *Fries* required operators of motorcycles and their passengers to wear protective headgear. The court found that the purpose of this legislation was to safeguard the individual wearing the headgear, not the public, and this was held not to be a proper exercise of the police power. We need not determine whether such an affirmative requirement concerning individual safety measures is analogous to a ban on the private use and possession of what the legislature has deemed to be a dangerous drug (see *State v. Baker* (1975), 56 Haw. 271, 535 P.2d 1394), because the legislature clearly had a rational basis for finding societal harm arising from the private use and possession of this drug. Among the findings of the studies judicially noticed by the trial court were such possible harmful effects as genetic damage, reduction in fertility, and even sterility. These are manifestly of concern to society at large, and given the underlying basis in scientific research, which we reiterate is not properly the subject of judicial challenge and refutation, we may not disturb the legislative response to this perceived danger.

## V.

■■ Plaintiffs' contention that the criminal penalties for private cannabis use are cruel and unusual requires little discussion, as it is based entirely on the premise we have already discounted—the lack of a rational basis for determining that cannabis use is harmful. We note only that the legislature has expressly recognized the widespread use of cannabis by Illinois citizens and has devised a penalty structure aimed at traffickers, with minimal penalties for private possession, depending on the amount possessed. (Ill. Rev. Stat. 1977, ch. 56½, par. 701 *et seq.*; *People v. McCabe* (1971), 49 Ill. 2d 338, 275 N.E.2d 407.) A similar penalty structure was

held not to be cruel and unusual in *State v. Renfro* (1975), 56 Haw. 501, 542 P.2d 366.

## VI.

■■■ Finally, plaintiffs assert that their right to the equal protection of the laws is violated because the use of substances which they assert are more harmful, tobacco and alcohol, is not prohibited, while the use of cannabis is. But even if we assume that these other substances are more harmful, the legislature is not constitutionally bound to attack all of these problems at once. As was stated in *Williamson v. Lee Optical* (1955), 348 U.S. 483, 489, 99 L. Ed. 563, 573, 75 S. Ct. 461, 465:

> "The problem of legislative classification is a perennial one, admitting of no doctrinaire definition. Evils in the same field may be of different dimensions and proportions, requiring different remedies. Or so the legislature may think. [Citation.] Or the reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind. [Citation.] The legislature may select one phase of one field and apply a remedy there, neglecting the others."

*People v. McCabe* (1971), 49 Ill. 2d 338, 275 N.E.2d 407, cited by plaintiffs, is not supportive of their position. There the court held that placing cannabis in the same statutory category as narcotics, such as heroin, was a violation of equal protection. The court expressly noted that the power of the state to prohibit the use of cannabis was not being contested, nor did the defendant claim that the State must similarly regulate substances such as alcohol and tobacco. The lesson of *McCabe* is that when the State does choose to impose similar penalties for the use of various substances, there must be a rational basis for the similar treatment. This does not prevent the State from choosing to focus on one aspect of related drug abuse problems; specifically, the State may ban the use of cannabis but permit the more entrenched use of alcohol and tobacco without offending the equal protection clause. *Ravin v. State* (Alas. 1975), 537 P.2d 494; *State v. Kells* (1977), 199 Neb. 374, 259 N.W.2d 19; *Blincoe v. State* (1974), 231 Ga. 886, 204 S.E.2d 597; see *Commonwealth v. Leis* (1969), 355 Mass. 189, 243 N.E.2d 898; *State v. Kantner* (1972), 53 Haw. 327, 493 P.2d 306, *cert. denied* (1972), 409 U.S. 948, 34 L. Ed. 2d 218, 93 S. Ct. 287.

For the foregoing reasons, the judgment of the trial court is affirmed.

Judgment affirmed.

JOHNSON, P. J., and LINN, J., concur.