COMMONWEALTH *vs.* JOSEPH D. LEIS
(and five companion cases[1]).

Suffolk.    December 2, 1968. — January 9, 1969.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, KIRK, SPIEGEL, & REARDON, JJ.

*Narcotic Drugs.    Constitutional Law,* Police power, Due process of law, Equal protection of laws, Cruel and unusual punishment, Narcotic drugs.

G. L. c. 94, §§ 205, 213A, and 217B, respectively making criminal offences possession of a narcotic drug, conspiracy to violate the narcotic drugs law, and possession of a narcotic drug with intent to sell it, do not constitute an improper exercise of the police power and do not deny due process of law as applied to marihuana [195]; nor does the inclusion of marihuana among the drugs defined to be narcotic drugs by § 197 constitute an arbitrary or unreasonable classification or deny equal protection of the laws [196–198]. KIRK, J., concurring.

Upon a report by a judge of the Superior Court prior to trial in that court in criminal prosecutions of first offenders for violations of certain narcotic drugs laws with respect to marihuana, for which no mandatory minimum penalty was prescribed as to first offenders, it could not be said that as to them the penalties allowed for such violations amounted to unconstitutionally cruel and unusual punishment. [198–199]

FOUR COMPLAINTS received and sworn to in the East Boston District Court on March 13, 1967; two indictments found and returned in the Superior Court on April 7, 1967.

---

[1] Two of the companion cases are against Leis and the other three cases are against one Ivan Weiss.

Upon appeals from the East Boston District Court to the Superior Court the six cases were reported by *Tauro,* C.J.

*Joseph S. Oteri (Harvey A. Silverglate* with him) for the defendants.

*James D. St. Clair,* Special Assistant District Attorney *(Robert Y. Murray,* Assistant District Attorney, with him), for the Commonwealth.

SPIEGEL, J.   There were complaints against the defendants for unlawfully having in their possession a certain narcotic drug, marihuana,[2] and for conspiracy to violate the Narcotic Drugs Law.[3]   They were found guilty in the District Court and appeals were filed in the Superior Court. In addition the defendants were indicted for illegal possession of marihuana with intent to sell it unlawfully.[4]   In the Superior Court the defendants filed motions to dismiss the complaints and the indictments, asserting that the statutory provisions regulating the possession, use and sale of marihuana in this Commonwealth are unconstitutional. After a lengthy hearing at which eighteen expert witnesses testified,[5] the trial judge denied the defendants' motions and reported the cases on the following question: "Are the provisions of G. L. chapter 94, sections 205, 213A and 217B constitutional as applied to the defendants, or either

[2] General Laws c. 94, § 205, as amended through St. 1958, c. 95, § 1, provides in part: "Whoever . . . is in possession of any narcotic drug, other than heroin, except by reason of a prescription lawfully and properly issued, shall be punished by a fine of not more than one thousand dollars or by imprisonment in the state prison for not more than three and one-half years, or in a jail or house of correction for not more than two and one-half years."

[3] General Laws c. 94, § 213A, as amended through St. 1960, c. 204, § 2, provides in part: "Whoever . . . conspires with another person to violate the narcotic drugs law . . . may be punished by imprisonment in the state prison for not more than five years, or by imprisonment in a jail or house of correction for not more than two years or by a fine of not less than five hundred dollars nor more than five thousand dollars."

[4] General Laws c. 94, § 217B, as amended through St. 1960, c. 204, § 3, provides in part: "Whoever has in his possession with intent to sell a narcotic drug, other than heroin . . . shall for the first offense be punished by imprisonment in the state prison for not less than five nor more than ten years . . . . Except in the case of a conviction for the first offense for a violation of this section the imposition or execution of the sentence shall not be suspended."

[5] Among these witnesses were psychiatrists, pharmacologists, sociologists, a toxicologist, a botanist, a law enforcement official and a professor of comparative religions.

of them under the provisions of the Fourth, Fifth, Eighth, Ninth and Fourteenth Amendments to the United States Constitution and Article I, part 1; Article IV, part 2; Article VII, part 1; Article XIV, part 1; and Article XXVI, part 1, of the Constitution of the Commonwealth of Massachusetts?'' The transcript of the hearing is before us.

The parties have stipulated to the following facts. ''The defendants were arrested at Logan International Airport . . . on March 11, 1967 by . . . members of the Boston Vice Squad when one of the defendants presented a claims check for a trunk at an airline baggage terminal. The trunk contained fifty pounds of sand and five pounds of marihuana. . . . [N]either of the defendants has been convicted previously for any violation of the narcotic drug laws of the Commonwealth.''

1. The defendants allege that the Narcotic Drugs Law of the Commonwealth is ''arbitrary and irrational and not suited to achieve any valid legislative end in that . . . it imposes harsh penalties upon mere possession of marihuana, or possession with intent to sell, or being present where marihuana is kept, without a showing that use of this substance poses a threat to the public health, safety, welfare or morals.'' They conclude that it therefore violates Part II, c. 1, § 1, art. 4, of the Constitution of the Commonwealth[6] and the Due Process Clause of the Fourteenth Amendment of the Constitution of the United States.[7] The defendants contend that the law, ''as applied to marihuana, goes beyond the police power of the Commonwealth in that it is not and cannot be aimed at achieving any valid legislative end, namely protection of the health, safety, welfare and morals.'' They assert that it therefore violates, in addition to Part II, c. 1, § 1, art. 4, of the Constitution

[6] ''[F]ull power and authority are hereby given and granted to the said General Court, from time to time, to make, ordain, and establish, all manner of wholesome and reasonable Orders, laws, statutes, and ordinances, directions and instructions, either with penalties or without . . . as they shall judge to be for the good and welfare of this Commonwealth, and for the government and ordering thereof, and of the subjects of the same.''

[7] ''No state shall . . . deprive any person of life, liberty, or property, without due process of law.''

of the Commonwealth and the Due Process Clause of the Fourteenth Amendment of the Constitution of the United States, art. 7 [8] and art. 1 [9] of the Declaration of Rights of the Constitution of the Commonwealth.

The defendants first argue that the law is "irrational and unreasonable" because the Legislature did not thoroughly investigate the available scientific and medical evidence concerning marihuana when enacting and revising the law.

We know of nothing that *compels* the Legislature to thoroughly investigate the available scientific and medical evidence when enacting a law. The test of whether an act of the Legislature is rational and reasonable is not whether the records of the Legislature contain a sufficient basis of fact to sustain that act. The Legislature is presumed to have acted rationally and reasonably. See *Commonwealth* v. *Finnigan,* 326 Mass. 378, 379; *Coffee-Rich, Inc.* v. *Commissioner of Pub. Health,* 348 Mass. 414, 422. "Unless the act of the Legislature cannot be supported upon any rational basis of fact that reasonably can be conceived to sustain it, the court has no power to strike it down as violative of the Constitution." *Sperry & Hutchinson Co.* v. *Director of the Div. on the Necessaries of Life,* 307 Mass. 408, 418. See *United States* v. *Carolene Prod. Co.* 304 U. S. 144, 154.

The defendants then argue that the law is irrational and unreasonable and that it serves no legitimate State interest because there is no evidence that marihuana endangers the health, safety, welfare or morals of the community. They assert, inter alia, that there is no evidence to support the "allegations" that the smoking of marihuana causes psychotic reactions or "psychotic breaks" and that the use of marihuana leads to the use of more dangerous drugs.

---

[8] "Government is instituted for the Common good; for the protection, safety, prosperity and happiness of the people."

[9] "All men are born free and equal, and have certain natural, essential, and unalienable rights; among which may be reckoned the right of enjoying and defending their Lives and Liberties; that of acquiring, possessing, and protecting property; in fine, that of seeking and obtaining their safety and happiness."

They summarily dispose of "[t]he charge that marihuana causes disorientation, psychomotor discoordination, excitement and confusion" as merely a statement that marihuana causes a state of intoxication if used to excess, and of the "charge" that marihuana causes automobile accidents as pure "speculation."

The testimony of the experts fully justifies the conclusion that marihuana is a "mind-altering" drug. There was evidence that the effect of such a drug is "a complex interaction between the physical or pharmacological properties of that drug . . . and most importantly the personality or character structure of the person consuming that drug, and . . . the social setting or context in which the drug is taken, including expectations, attitudes, et cetera." The smoking of marihuana may cause a state of euphoria and hallucinations or mental confusion and acute panic. It tends to exacerbate an underlying mental condition and to accentuate the smoker's basic personality makeup. When used by persons who have personality disorders or who are predisposed to "psychotic breaks," it may contribute to the onset of a "psychotic break." [10] The problem is magnified by the fact that persons having personality disorders and predispositions to "psychotic breaks" are more likely to experiment with marihuana and to become psychologically dependent upon it. Although the smoking of marihuana triggers only "acute [short-term] psychotic breaks" and does not apparently cause permanent psychotic injury or mental deterioration, an acute psychotic break, while it lasts, is as serious as a chronic mental disorder.

---

[10] The defendants point to one witness at the hearing who denied that psychotic breaks triggered by marihuana exist and to another who considered the "so-called psychotic break" to be so rare as to be "non-existent." They overlook however other witnesses who testified that between one and ten per cent of the population of the United States are susceptible to them. The credibility or reliability of these witnesses is not lessened by the fact they had not personally observed a substantial number of marihuana-induced "psychotic breaks." They were not testifying only with regard to their personal experiences and experiments but also with regard to information gathered from the vast amount of literature concerning marihuana. In addition, we note that the psychotic breaks triggered by marihuana are acute, and that it is unlikely that persons suffering from them would seek medical attention during the effects of the drug.

Commonwealth *v.* Leis.

Essentially the experts do not point to any evidence of a direct, causal relationship between the smoking of marihuana and the use of more dangerous drugs. The studies that do exist discount the once prevalent belief that the smoking of marihuana inevitably leads to the use of more dangerous drugs.[11] However, it is not necessary to show such a direct, causal relationship. There is considerable evidence that marihuana does lead some people to the use of more dangerous drugs. The progression from marihuana to heroin or LSD is a frequent sequence.

In an attempt to disprove the claim that the use of marihuana may cause automobile accidents, the defendants say that "no evidence [was] produced linking marihuana use with . . . [such] accidents." The evidence, however, showed there is no accurate, reliable scientific means of determining whether the operator of a motor vehicle has recently smoked marihuana. A person "high" on marihuana is unlikely to stagger or weave when he walks. While the smoking of marihuana may cause dilatation of the conjunctival blood vessels, there is recent evidence that it does not cause pupillary dilatation.[12] The burning of marihuana does produce a recognizable odor, but that odor could be easily disguised. These properties of the drug undoubtedly account for the unavailability of statistical data. However, there is agreement among the experts

[11] A study of 1,034 adults in California whose first arrest resulted from their involvement with marihuana showed that within five years 12.8% had been arrested for offences concerning heroin and between eleven and thirteen per cent for offences concerning other dangerous drugs. A similar study showed that 22.3% of the persons arrested during one year for offences concerning heroin had "prior identifiable marihuana histories." The results of a study of opiate addicts admitted to the Federal hospitals at Lexington, Kentucky, and Fort Worth, Texas, suggest that the apparent progression from marihuana to the opiates is the result of environmental conditions and not an inherent characteristic of marihuana. See J. Ball, C. Chambers and M. Ball, The Association of Marihuana Smoking with Opiate Addiction in the United States, 59 J. Crim. L., Crim. and Police Science, 171 (1968).

[12] Weil, Zinberg and Nelsen, Clinical and Psychological Effects of Marihuana in Man, 162 Science 1234 (1968). In what they proclaim to be the "first attempt to investigate marihuana in a formal, double-blind experiment with the appropriate controls" and the "first attempt to collect basic clinical and psychological information on the drug by observing its effects on marihuana-naive human subjects in a neutral laboratory setting," the authors also found that the cognitive function, muscular coordination and attention of the marihuana-naive subjects was affected. *Id.* at 1235, 1240.

that marihuana causes an alteration of sensory perception, a degree of psychomotor discoordination and an inability to concentrate. All of these effects of marihuana would interfere with the operation of a motor vehicle.

We do not think that the present unavailability of or inability to collect absolute, statistical and scientific proof that the smoking of marihuana (1) triggers "psychotic breaks," (2) leads to the use of more dangerous drugs and (3) causes automobile accidents prevents the Legislature from acting to prohibit its use. Surely the defendants would not contend, for example, that unless experiments absolutely establish that thalidomide causes birth defects the Legislature could not prevent the distribution of that drug. To prevent "psychotic breaks," to guard against the use of more dangerous drugs and to eliminate a cause of automobile accidents are valid State interests.

The defendants insist that the right to smoke marihuana is guaranteed by the Constitutions of the Commonwealth and of the United States and must be balanced against the interests of the State in prohibiting its use. No such right exists. It is not specifically preserved by either Constitution. The right to smoke marihuana is not "fundamental to the American scheme of justice . . . necessary to an Anglo-American regime of ordered liberty." *Duncan* v. *Louisiana,* 391 U. S. 145, 149–150, note 14. It is not within a "zone of privacy" formed by "penumbras" of the First, Third, Fourth and Fifth Amendments and the Ninth Amendment of the Constitution of the United States. See *Griswold* v. *Connecticut,* 381 U. S. 479, 484. The defendants have no right, fundamental or otherwise, to become intoxicated by means of the smoking of marihuana. See *Robinson* v. *California,* 370 U. S. 660, 664. Cf. *Crane* v. *Campbell,* 245 U. S. 304, 307–308.

We do not agree with the defendants that the Legislature is bound to adopt the "least restrictive alternative" that would fulfill its purpose of protecting the health, safety and welfare of the community. The least restrictive alternative doctrine does not apply to the instant case. It has been

limited to regulations affecting interstate commerce (see e.g. *Dean Milk Co.* v. *City of Madison*, 340 U. S. 349, 354), constitutionally sheltered activity (see e.g. *Aptheker* v. *Secretary of State*, 378 U. S. 500, 512), and economic regulations (see e.g. *Weaver* v. *Palmer Bros. Co.* 270 U. S. 402, 414–415). The Narcotic Drugs Law is not an economic regulation. It affects neither interstate commerce nor constitutionally sheltered activity.

In any event, there is ample justification for the Legislature to conclude that the total prohibition of marihuana is the "least restrictive alternative." The evidence indicates that the effects of smoking marihuana are unpredictable. No one can predict how a given person will react, or how such a person will react to the drug at any given time. There is no known means of determining whether a person has smoked marihuana, how much he has smoked or even how much causes intoxication. The difficulty of establishing the intoxication of the driver who is under the influence of marihuana renders G. L. c. 90, § 24 (1) (a),[13] as amended through St. 1963, c. 369, § 2, an insufficient safeguard with regard to the danger of automobile accidents.

2. The defendants maintain that the Narcotic Drugs Law "has singled out for prohibition and punishment possessors of and possessors of with intent to sell, marihuana, while the laws permit the regulated use, sale and possession of substances far more harmful than marihuana . . . punish less harshly possession and sale of substances far more harmful than marihuana . . . and punish equally harshly substances far more harmful than marihuana." Therefore, they say that it violates art. 1 of the Declaration of Rights of the Constitution of the Commonwealth and the Equal Protection Clause of the Fourteenth Amendment of the Constitution of the United States.[14]

---

[13] "Whoever . . . operates a motor vehicle while under the influence of . . . narcotic drugs, as defined in section one hundred and ninety-seven of chapter ninety-four . . . shall be punished by a fine of not less than thirty-five nor more than one thousand dollars, or by imprisonment for not less than two weeks nor more than two years, or both."

[14] "No state shall . . . deny to any person within its jurisdiction the equal protection of the laws."

The defendants argue that the inclusion of marihuana in the class of drugs defined by G. L. c. 94, § 197, to be "narcotic drugs" is arbitrary. This argument ignores "the rules by which this contention must be tested . . . 1. The equal protection clause of the Fourteenth Amendment does not take from the State the power to classify in the adoption of police laws, but admits of the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis and therefore is purely arbitrary. 2. A classification having some reasonable basis does not offend against that clause merely because it is not made with mathematical nicety or because in practice it results in some inequality. 3. When the classification in such a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed. 4. One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary." *Lindsley* v. *Natural Carbonic Gas Co.* 220 U. S. 61, 78–79.

"Narcotic drug" as defined in G. L. c. 94, § 197, as amended through St. 1966, c. 71, §§ 1 and 2, includes "coca leaves, cocaine, alpha or beta eucaine . . . opium, morphine, heroin, codeine, apomorphine, isonipecaine, amidone, isoamidone, keto-bemidone, peyote, LSD, psyilocybin, D.M.T. . . . and cannabis (sometimes called marihuana . . .)." All of these substances are "mind-altering" drugs. The fact that some are more potent or more dangerous than others does not render the classification arbitrary. To some degree they are all capable of producing psychotic disorders, states of intoxication and psychological dependency, and consequently present some danger to the health and safety of the community. We do not think that the classification of marihuana with the others is arbitrary or irrational.

The defendants also contend that the noninclusion of other "mind-altering" drugs in G. L. c. 94, § 197, as amended through St. 1966, c. 71, §§ 1 and 2, which are "acknowledged to be . . . more harmful" than marihuana, causes the law

to "run afoul of the requirements of equal protection." They concede that the Legislature may select the kinds of behavior that it wishes to proscribe. They claim, however, that this "does not mean that a Legislature may actually proscribe behavior of one class of people (e.g., those who choose to obtain a mild state of intoxication with marihuana) and allow another class of people to freely indulge in behavior of an exactly similar nature (e.g., those who choose to obtain a mild state of intoxication with alcohol)."

We do not think that a statute which proscribes generally certain conduct can be said to be discriminatory simply because a certain group of persons tend to engage more often in that conduct than others. Such "de facto" discrimination does not violate the Equal Protection Clause. There are at least two distinctions between alcohol and the "mind-altering" intoxicants that are defined by the law to be narcotic drugs. First, alcohol is susceptible to a less restrictive alternative means of control. There are recognized, accurate means of determining its use and its abuse. Second, the effects of alcohol upon the user are known. We think that the Legislature is warranted in treating this known intoxicant differently from marihuana, LSD or heroin, the effects of which are largely still unknown and subject to extensive dispute. The Legislature is free to recognize degrees of harm and may confine its restrictions to instances where it determines the need for them is clearest. See *Hall* v. *Geiger-Jones Co.* 242 U. S. 539, 556–557; *Skinner* v. *Oklahoma*, 316 U. S. 535, 539–540; *Mulligan* v. *Hilton*, 305 Mass. 5, 13.

3. Finally, the defendants contend that the "penalties provided for offenses under the Narcotic Drugs Law, as applied to marihuana, constitute cruel and excessive punishment." They contend that it therefore violates art. 26 of the Declaration of Rights of the Constitution of the Commonwealth[15] and the Eighth Amendment of the Constitution of the United States.[16]

---

[15] "No magistrate or court of law, shall . . . impose excessive fines, or inflict cruel or unusual punishments."

[16] "[E]xcessive fines [shall not be] imposed, nor cruel and unusual punishments inflicted."

The defendants were convicted and sentenced on the complaints in the District Court. They have appealed to the Superior Court and are awaiting trials de novo on the complaints in that court. They have not yet been tried on the indictments. As they have not as yet been convicted of the offences with which they are charged, it is doubtful that they have standing to even challenge the minimum penalties provided by G. L. c. 94. See *Weems* v. *United States,* 217 U. S. 349; *Lehon* v. *Atlanta,* 242 U. S. 53, 56. In any event, no mandatory minimum penalty is provided in the law for any of the violations charged. G. L. c. 94, §§ 205, 213A, and 217B. The defendants could be found guilty of all three violations and not be required to serve any sentence or to pay any fine.

The defendants also argue that "any sentence" would be excessive or that the incidental consequences of being convicted constitute cruel and unusual punishment. The defendants are not charged with having a "status" over which they have no control. See *Robinson* v. *California,* 370 U. S. 660. "The basic concept underlying the Eighth Amendment is nothing less than the dignity of man. . . . Fines, imprisonment and even execution may be imposed depending upon the enormity of the crime." *Trop* v. *Dulles,* 356 U. S. 86, 100. Unless the punishment exceeds a constitutional limit, the task of assigning penalties is for the Legislature. Neither constitution requires the Legislature "to fix or impose any particular penalty for any crime . . . or to impose the same or 'proportionate' sentences for separate and independent crimes." *Williams* v. *Oklahoma,* 358 U. S. 576, 586. See *Harding* v. *Commonwealth,* 283 Mass. 369, 374. Here the Legislature has seen fit to give the trial judge considerable leeway in sentencing. We have no reason to believe that a judge will not continue to exercise this discretion wisely and fail to distinguish between the youth who was experimenting with marihuana or even a constant user of the drug and the "pusher" or person trafficking in marihuana for financial gain.

4. Because of the extensive testimony introduced at the

hearing we have commented on a number of the factual contentions. It is clear that the Legislature acted well within constitutional limitations.

5. The question is answered in the affirmative.

*So ordered.*

KIRK, J. (concurring). I concur in the conclusions reached on all of the points discussed in the opinion. The findings of the judge contain much that is highly informative on a currently controversial subject. I have grave misgivings, however, about the propriety and scope of the hearing in the Superior Court. These misgivings have been increased rather than dispelled by the majority's treatment of the reported question. Implicit in the hearing and in the opinion is the assumption that on the record of the case before it the judicial department of the government had the power to institute and to pursue to a conclusion an inquiry to establish that there was a factual foundation for the judgment made by the General Court, in its exercise of the police power, that marihuana should be classified as a narcotic. The assumption, I respectfully suggest, is wrong, without precedent, and in contravention of art. 30 of the Declaration of Rights of the Constitution of the Commonwealth.

The governing principles are few and have often been stated in our decisions and in opinions of the Supreme Court of the United States. "Every presumption is indulged in favor of the validity of a statute." *Howes Bros. Co.* v. *Unemployment Compensation Commn.* 296 Mass. 275, 284. *Slome* v. *Chief of Police of Fitchburg*, 304 Mass. 187, 192. *Druzik* v. *Board of Health of Haverhill*, 324 Mass. 129, 138. The presumption of constitutionality must prevail in the absence of some factual foundation specifically set forth in the record for overthrowing the statute. *Merit Oil Co.* v. *Director of the Div. on the Necessaries of Life*, 319 Mass. 301, 305. *Commonwealth* v. *Chamberlain*, 343 Mass. 49, 51–52. *O'Gorman & Young, Inc.* v. *Hartford Fire Ins. Co.* 282 U. S. 251, 257–258. *Pacific States Box & Basket Co.* v. *White*, 296 U. S. 176, 185.

Where the reasonableness of the legislative finding or the factual basis of the legislative finding is fairly debatable the legislative determination must be sustained. *Simon* v. *Needham,* 311 Mass. 560, 564, and cases cited. *Foster* v. *Mayor of Beverly,* 315 Mass. 567, 572. *Caires* v. *Building Commr. of Hingham,* 323 Mass. 589, 594–595. *Druzik* v. *Board of Health of Haverhill,* 324 Mass. 129, 138–139. That there may be an earnest conflict of serious opinion does not suffice to bring matters of legislative judgment within the range of judicial cognizance. See *Lowell Coöp. Bank* v. *Coöp. Cent. Bank,* 287 Mass. 338, 344. "Judicial inquiry does not extend to the expediency, wisdom or necessity of the legislative judgment for that is a function that rests entirely with the law-making department." *Slome* v. *Chief of Police of Fitchburg,* 304 Mass. 187, 189. "Judicial inquiry does not concern itself with the accuracy of the legislative finding, but only with the question whether it so lacks any reasonable basis as to be arbitrary. *Standard Oil Co.* v. *Marysville,* 279 U. S. 582, 586–587." *Borden's Farm Prods. Co. Inc.* v. *Ten Eyck,* 297 U. S. 251, 263.

These salutary principles should be given practical application. Their application to the case at bar leads me to the conclusion that the hearing in the Superior Court was not only not warranted but, indeed, was precluded.

The challenge to the validity of the legislative judgment was made in the Superior Court by motions to dismiss the indictment and complaints mainly on the grounds that the "statute is arbitrary and irrational" and "contrary to the weight of scientific evidence." Other averments in the motions are so phrased as to misplace the burden of proof or contend that measures other than the legislation could be taken to correct the supposed dangers in the use of marihuana.[1]

The generality of these allegations falls far short of the

---

[1] For example, the motion states that "the Commonwealth . . . seeks to control activity which has not been shown to pose a serious and immediate danger . . ." and " . . . problems or dangers [which] are susceptible to correction through narrower regulation which would not invade protected rights."

requirements for specificity of facts to overcome the presumption of the validity of the statute. On this ground alone the motions to dismiss should have been denied. Furthermore the assertion in the motions that the legislative judgment was "contrary to the weight of scientific evidence" is pregnant with the admission that there was a body of evidence to support the legislative judgment. This being so, the issue was debatable. And again the legislative judgment should stand without further inquiry. Finally, if for any reason whatever the judge felt that the taking of evidence was necessary, a summary hearing should have been sufficient. The only issue was whether the legislative judgment was debatable. The burden was on the defendants to show that their position was so clearly right as not to be debatable. This is an onerous burden and could doubtless be shown to be unsupportable by calling one witness for the Commonwealth if the defendants attempted to assume the burden. Once it appeared that the question whether marihuana should be classified as a narcotic drug was fairly debatable the judge's duty was clear: — declare the statute valid. It is not the court's function to launch an inquiry to resolve a debate which has already been settled in the legislative forum. See *Brotherhood of Locomotive Firemen & Enginemen* v. *Chicago, Rock Island & Pacific R.R.* 393 U. S. 129. Rather, under art. 30 of the Declaration of Rights it was the judge's duty, despite the agreement of counsel, to refuse to conduct such a hearing and to give effect to the will of the people as expressed in the statute by their representative body. It is in this way, I respectfully submit, that the doctrine of separation of powers is given meaning.