TIMOTHY E. MARCOUX & others[1] *vs.* ATTORNEY GENERAL.

Suffolk. February 13, 1978. — April 19, 1978.

Present: HENNESSEY, C.J., QUIRICO, KAPLAN, & ABRAMS, JJ.

*Narcotic Drugs. Constitutional Law*, Police power, Narcotic drugs.

General Laws c. 99C, § 34, prohibiting the possession of marihuana, is a
    proper exercise of the police power and, even as applied to the per-
    sonal possession of a small amount of the substance, does not infringe
    on the constitutional right of privacy. [63-72]

CIVIL ACTION commenced in the Supreme Judicial Court
for the county of Suffolk on May 12, 1977.

The case was heard by *Wilkins*, J.

*Matthew H. Feinberg* for the plaintiffs.

*Barbara A. H. Smith*, Assistant Attorney General, for the
defendant.

KAPLAN, J.  Lodged in this court for Suffolk County, the
action was brought by a number of plaintiffs, for themselves
and a class of persons similarly situated, against the Attor-
ney General as defendant. The complaint alleged that the
defendant proposed to enforce against the plaintiffs and
others a statute, G. L. c. 94C, § 34, which prohibits under
penalty the knowing possession of marihuana; the relief
sought was a declaration that the statute is unconstitutional
at least as applied to the personal possession of a small
amount of the substance. The defendant having attacked
the complaint by motion to dismiss, the single justice held
that it described a controversy suitable for a declaration,[2]

---

[1] Thirty-six named persons and sixteen pseudonymous persons.

[2] See *First Nat'l Bank* v. *Attorney Gen.*, 371 Mass. 773, 781, appeal
pending in the Supreme Court of the United States, with question of
jurisdiction reserved to hearing on the merits, 430 U.S. 964 (1977); *Sturgis*
v. *Attorney Gen.*, 358 Mass. 37, 38 (1970).

and he entered judgment in appropriate form upholding the constitutionality of the statute. He noted that a broad attack on the laws regulating the possession of (as well as the traffic in) marihuana had been repelled by this court in the case of *Commonwealth* v. *Leis,* 355 Mass. 189 (1969).[3] If the *Leis* case was to be overruled, he thought it should be done by the full bench. We are not prepared to overrule that 1969 decision, and accordingly we affirm the judgment appealed from.

In the *Leis* case we disagreed with the contention that the use of marihuana involved a liberty of high constitutional rank. *Id.* at 195. Therefore the validity of the legislation was to be tested in the first place by inquiring whether it bore a reasonable relation to any permissible object of legislation such as the protection of public health or safety.

We may observe that in the hands of this court, at least, such an inquiry has not been merely pro forma with a preordained conclusion favorable to the legislation. See *Commonwealth* v. *Dennis,* 368 Mass. 92, 96 (1975); *Coffee-Rich, Inc.* v. *Commissioner of Pub. Health,* 348 Mass. 414 (1965); *Opinion of the Justices,* 322 Mass. 755 (1948). In *Leis* the record at trial level comprised an inquiry through expert testimony into the medical and related aspects of the marihuana problem. See Marihuana and the Law: A Judicial Opinion, 3 Suffolk U.L. Rev. 23 (1968) (excerpts from trial judge's opinion). On review, we took note of the scientific evidence and concluded, as had the trial judge, that the Legislature could believe with reason that the use of marihuana created dangers both to users and to others justifying public control. Marihuana is a psychoactive drug whose immediate effects may include inducement of a state of euphoria or anxiety or panic, reduction in motor control, and

---

[3] The defendants in *Leis,* prosecuted for possession of marihuana, possession with intent to sell, and conspiracy to violate the narcotic drug laws, moved in Superior Court to dismiss on constitutional grounds. The trial judge denied the motions but reported the question whether the relevant statutes violated provisions of the Constitutions of the. Commonwealth and the United States. 355 Mass. at 190.

alterations of time perceptions and memory. Although the causal links could be disputed, there was ground to suspect that use of the drug was a factor in psychotic incidents experienced by some smokers, in the descent of users to harder and more dangerous drugs, and in the occurrence of highway accidents. As to the last danger, the difficulty or impossibility of testing drivers for marihuana intoxication could be thought to justify a ban on the substance rather than a qualified regulation of it. See *Leis,* 355 Mass. at 195; 1972 Mass. House Doc. No. 5896, Ninth Interim Report of the Special Commission on Drug Abuse 85-90.

A showing that, since *Leis,* doubts about the drug had been resolved in its favor beyond reasonable scientific dispute, would portend a different legal result. See *State* v. *Anonymous,* 355 A.2d 79 (Conn. Supp. 1976). But the plaintiffs conceded at oral argument and in their brief that a fresh inquiry would yield no different result on application of a "rational relation" test.[4] As the single justice said, the complaint admitted implicitly that marihuana can be harmful in some circumstances. And the most recent judicial opinions (not excluding *Ravin* v. *State,* 537 P.2d 494 [Alas. 1975], which within certain limits held unconstitutional a prohibition of possession for private use) have found the apprehension of dangers to health and safety to be rationally based; they mention such risks as psychotic reactions and automobile accidents. See, e.g., *State* v. *Anonymous, supra; Blincoe* v. *State,* 231 Ga. 886 (1974); *State* v. *Baker,* 56 Haw. 271 (1975); *State* v. *Kells,* 199 Neb. 374 (1977).[5]

---

[4] The cases at times speak of legislation which need only undergo a test of "reasonable relation" and legislation that must survive "strict scrutiny," but we conceive that these soubriquets are a shorthand for referring to the opposite ends of a continuum of constitutional vulnerability determined at every point by the competing values involved. Cf. *State* v. *Erickson,* 574 P.2d 1, 11-12 (Alas. 1978).

[5] Cited in the briefs of both parties is Marihuana and Health (Fifth Ann. Rep. to Congress from the Secretary of HEW, 1975), which states (at 10) that "evidence of a range of potentially serious consequences of marihua-

The plaintiffs contend, however, that legislation which goes to the extreme of forbidding the possession in one's own home of a substance meant for personal use, invades a "zone of privacy" (*Griswold* v. *Connecticut,* 381 U.S. 479, 484 [1965]) and cannot be justified constitutionally by a slim demonstration of potential harm; better or more substantial reason would have to be shown. That contention, made in somewhat different form, was likewise rejected in *Leis* (355 Mass. at 195).

It is true that "privacy" has grown in constitutional estimation as related to certain matters in which individual autonomy is thought to be especially important and desirable.[6] Thus it is held that individual choice as to procreation and other core concerns of human existence may be circumscribed by the State only in deference to highly significant public goals. See, e.g., *Roe* v. *Wade,* 410 U.S. 113, 152 (1973); *Framingham Clinic, Inc.* v. *Selectmen of Southborough,* 373 Mass. 279, 285 (1977). And so, in our own decision of *Superintendent of Belchertown State School* v. *Saikewicz,* 373 Mass. 728, 738-742 (1977), we recognized a constitutional right of independent election, which may as well be called a right of privacy, as to the continuation of life itself: here the individual's choice whether to accept or decline medical treatment is normally beyond veto by the State. See also *People* v. *Privitera,* 74 Cal. App. 3d 936 (1977).

The right to possess or use marihuana cannot be readily assimilated in character or importance to the kinds of rights just mentioned (cf. *Whalen* v. *Roe,* 429 U.S. 589, 600 n.26 [1977]), but the plaintiffs contend that *Stanley* v. *Georgia,* 394 U.S. 557 (1969) (decided after *Leis*), is close to their

---

na use exists." For recent discussions of the scientific position, see the materials cited in 1972 Mass. House Doc. No. 5896, Ninth Interim Report of the Special Commission on Drug Abuse 91-96, and *Ravin* v. *State,* 537 P.2d 494, 504 n.43 (Alas. 1975).

[6] In *Whalen* v. *Roe,* 429 U.S. 598, 599-600 (1977), privacy is spoken of as comprising interests in "avoiding disclosure of personal matters" and "independence in making certain kinds of important decisions."

case. Stanley was prosecuted for the possession in his home of material claimed to be obscene. The Court wrote that "[i]f the First Amendment means anything, it means that a State has no business telling a man, sitting alone in his own house, what books he may read or what films he may watch." 394 U.S. at 565. The difficulties of proving that possession of obscene matter in a particular case was with intent to distribute (a state of facts assumed to be subject to criminal punishment) would not "justify infringement of the individual's right to read or observe what he pleases. Because that right is so fundamental to our scheme of individual liberty, its restriction may not be justified by the need to ease the administration of otherwise valid criminal laws. . . . We hold that the First and Fourteenth Amendments prohibit making mere private possession of obscene material a crime." *Id.* at 568. The plaintiffs think the *Stanley* case suggests that possession of marihuana in the home merits like immunity from governmental intervention, even though no cognizable First Amendment interest is involved. In this connection they cite dicta from the later opinions in *Paris Adult Theatre I* v. *Slaton*, 413 U.S. 49 (1973), and *United States* v. *Orito*, 413 U.S. 139 (1973) (and might have added *United States* v. *12 200-Ft. Reels of Super 8 MM. Film*, 413 U.S. 123, 126 [1973]). These cases, upholding prosecutions for public exhibition and transportation of obscene films against constitutional challenge, sought to distinguish *Stanley* as having been decided "on the narrow basis of the 'privacy of the home,' which was hardly more than a reaffirmation that 'a man's home is his castle.'" 413 U.S. at 66. The Court said the "privacy right encompasses and protects the personal intimacies of the home" (*Paris Adult Theatre* at 65), and the "Constitution extends special safeguards to the privacy of the home, just as it protects other special privacy rights such as those of marriage, procreation, motherhood, child rearing, and education." *Orito* at 142.

This language does not announce a privacy doctrine universally demanding peculiar justification for enforcing the criminal law against conduct within private homes. Never-

theless such justification may be required when the effects of the behavior are limited more or less to the hearth. Thus the *Paris Adult Theatre* and *Orito* cases were stressing the point that in *Stanley* the place of the possession, the confinement of the viewing of the material, reduced to a null force, or nearly so, any claim of deleterious public effects which could possibly legitimate the State's intrusion. See also *Smith* v. *United States,* 431 U.S. 291, 307 (1977). The *Stanley* Court had indeed said, replying to the argument that the private reading of obscene matter would cause antisocial conduct, that there was "little empirical basis" for that assertion (394 U.S. at 566) and in all events the "least restrictive alternative" analysis familiar in First Amendment discussions would require that the State legislate against the antisocial behavior rather than the ideas that caused it. In contrast, in the case of marihuana, we are bound to assume for constitutional purposes that the private use does have public results, does spill over into the public domain and touch matters of legitimate State interest, while the freedom impaired by the penal statute, taken at its highest evaluation, does not reach the level of that freedom conceived by the Court to be implicated in *Stanley.*

We find direct confirmation for these views in *Stanley* where the Court speaks to possession of drugs among other contraband: "What we have said in no way infringes upon the power of the State or Federal Government to make possession of other items, such as narcotics, firearms, or stolen goods, a crime. Our holding in the present case turns upon the Georgia statute's infringement of fundamental liberties protected by the First and Fourteenth Amendments. No First Amendment rights are involved in most statutes making mere possession criminal." 394 U.S. at 568 n.11.[7]

---

[7] That the *Stanley* decision resulted from a combination of its First Amendment orientation, the locus of the questioned conduct, and the confinement of the effects of that conduct, is suggested by a comparison with the Supreme Court's affirmance without opinion, 425 U.S. 901 (1976), of *Doe* v. *Commonwealth's Attorney for Richmond,* 403 F. Supp. 1199 (E.D. Va. 1975) (three-judge court), holding that the State could

With near unanimity, courts have in fact rejected argu-
ments like the plaintiffs', including that based on "privacy,"
for a constitutionally-protected right to have and use mari-
huana in the home. See, e.g., *United States* v. *Drotar*, 416
F.2d 914 (5th Cir. 1969), vacated on other grounds, 402
U.S. 939 (1971); *State* v. *Murphy*, 117 Ariz. 57 (1977);
*Laird* v. *State*, 342 So. 2d 962 (Fla. 1977); *Blincoe* v. *State*,
231 Ga. 886 (1974); *State* v. *Renfro*, 56 Haw. 501 (1975);
*State* v. *Kells*, 199 Neb. 374 (1977); *State* v. *Anderson*, 16
Wash. App. 553 (1976). The only contrary decision by an
appellate court is that already mentioned, *Ravin* v. *State*,
537 P.2d 494 (Alas. 1975),[8] which, it seems, may rest largely
on the explicit privacy right found in art. 1, § 22, of the
Alaska Constitution, adopted in 1972.[9]

---

outlaw private homosexual conduct of consenting adults. See also *Lovisi*
v. *Slayton*, 539 F.2d 349 (4th Cir. 1976); *Enslin* v. *Wallford*, 565 F.2d
156 (4th Cir. 1977) (unpublished opinion), [cert. denied sub nom. *Enslin*
v. *Bean*, 436 U.S. 912 (1978)]. But note *Commonwealth* v. *Balthazar*,
366 Mass. 298 (1974), habeas corpus granted on other grounds sub nom.
*Balthazar* v. *Superior Court*, 428 F. Supp. 425 (D. Mass. 1977), aff'd, 573
F.2d 698 (1st Cir. 1978); *Commonwealth* v. *Scagliotti*, 373 Mass. 626,
628 (1977); *Commonwealth* v. *King*, 374 Mass. 5, 14 (1977).

[8] The *Ravin* holding insulated from criminal sanction no more than pos-
session of marihuana for private use by adults within the physical confines
of the home. The limited reach of the Alaska privacy doctrine was further
demonstrated in *State* v. *Erickson*, 574 P.2d 1 (Alas. 1978), holding that
possession of cocaine for use in the home could be totally prohibited be-
cause of the danger that a user would leave home and commit violent
crime while under the influence of the drug.

[9] Attacks predicated on constitutional grounds other than substantive
due process and privacy have been also generally rejected. In *Leis* we
passed on and rejected challenges based on theories of equal protection
and cruel and unusual punishment. These contentions, not pressed in the
present case, would have less force today because marihuana is no longer
classed in our legislation as a "narcotic" and the penalties for simple
possession have been reduced. See the text below. See also the cases reject-
ing contentions that the marihuana laws prevent freedom of expression,
threaten cruel and unusual punishment, and either deny equal protection
or lack rational basis in distinguishing marihuana from alcohol and tobac-
co and treating it like true narcotics, e.g., *United States* v. *Kiffer*, 477
F.2d 349 (2d Cir. 1973) (Feinberg, J.); *United States* v. *Drotar*, 416 F.2d
914 (5th Cir. 1969), vacated on other grounds, 402 U.S. 939 (1971);
*Louisiana Affiliate of Nat'l Organization for Reform of Marijuana Laws*

It may indeed be that our discussion has taken too wide a range. If marihuana is supposed with some reason to be harmful to users, the Legislature may claim a power to act against it even without identifying effects on others. Whereas in the First Amendment's realm of information and belief a State "cannot constitutionally premise legislation on the desirability of controlling a person's private thoughts" (*Stanley, supra*, 394 U.S. at 566), in matters of health and safety the State has long imposed varying constraints which seem directed to protecting individuals from themselves. This notion of governmental power is pervasive even though there is some idea also at work that in the end unhealthy individuals burden the community. See *Commonwealth* v. *Howie*, 354 Mass. 769, cert. denied, 393 U.S. 999 (1968), where we upheld the constitutionality of legislation requiring motorcyclists to wear safety helmets.[10] Much health and safety legislation aims not at battling communicable diseases but at saving people from their own folly. Many of the laws controlling impure and unsafe foods and drugs aim not so much at educating the consumer as at keeping the suspect items wholly beyond his reach. Just how far the

v. *Guste*, 380 F. Supp. 404 (E.D. La. 1974), aff'd, 511 F.2d 1400 (5th Cir.), cert. denied, 423 U.S. 867 (1975); *People* v. *Aguiar*, 257 Cal. App. 2d 597 (1968); *State* v. *Kantner*, 53 Haw. 327 (1972); *State* v. *O'Bryan*, 96 Idaho 548 (1975). See also *State* v. *Bell*, 136 Vt. 144 (1978). See generally Soler, Of Cannabis and the Courts: A Critical Examination of Constitutional Challenges to Statutory Marijuana Prohibitions, 6 Conn. L. Rev. 601 (1974); Bonnie & Whitebread, The Forbidden Fruit and the Tree of Knowledge: An Inquiry into the Legal History of American Marijuana Prohibition, 56 Va. L. Rev. 971, 1125-1155 (1970).

An attack on equal protection grounds did succeed in *People* v. *Sinclair*, 387 Mich. 91 (1972); the court's decision that marihuana could not be rationally classified with other drugs led to new legislation reducing the penalties for its possession. See also *State* v. *Leigh*, No. 77-267 , Fla. Cir. Ct., Dade County, Jan. 18, 1978 (46 U.S.L.W. 2425 [1978]) (finds no rational basis for proscription of use and possession of marihuana in the home).

[10] See *State ex rel. Colvin* v. *Lombardi*, 104 R.I. 28 (1968). But see *People* v. *Fries*, 42 Ill. 2d 446 (1969); *American Motorcycle Ass'n* v. *Department of State Police*, 11 Mich. App. 351 (1968).

State may go in these directions before it encounters a firm right to individual choice, we need not now try to say.

The individual interests which are urged here against the conventional police-power reasons for the ban on marihuana are in essence merely recreational. These interests surely have their place in the assortment of liberties protected by due process guaranties (cf. *Selectmen of Framingham* v. *Civil Serv. Comm'n*, 366 Mass. 547 [1974]), but as they are relatively weak they do not overcome those conventional reasons or justifications. The total situation finds a place on the continuum of constitutional vulnerability (see note 4 *supra*) where judicial nullification of the proscriptive legislation appears unwarranted.

According to the present pattern of the criminal codes of the States of the Union, the possession of marihuana is illegal.[11] See Soler, Of Cannabis and the Courts: A Critical Examination of Constitutional Challenges to Statutory Marijuana Prohibitions, 6 Conn. L. Rev. 601, 716-723 (1974); also vol. 3 of Marijuana: A Study of State Policies and Penalties (National Governors' Conference, Center for Policy Research and Analysis) 98-104 (1977). Nevertheless the wisdom of such legislation (and of correlative laws as to distribution) remains under active and even vehement debate. The menace to health and safety is clearly not as grave as was once supposed and, some would say, is minor compared to the dangers of a number of substances not controlled or banned. See J. Kaplan, Marijuana — The New Prohibition (1970). The enforcement problems and evils encountered under current law need not be dwelt on. Some countervailing benefits have been intimated above. These all sum up as matters for legislative deliberation and disposition, and it is worth noting that our Legislature has not been insensitive to the movement of public debate. Since the decision in *Leis*, the penalty for simple possession of mari-

---

[11] Subject to certain exceptions, the knowing possession of marihuana is a criminal offense under Federal law as well, 21 U.S.C. § 844(a) (1970), a proscription which would of course continue to apply to the plaintiffs even if they obtained their prayed-for declaration.

huana has been reduced from up to three and a half years' imprisonment and a fine to six months' imprisonment and fine; for first convictions, probation is to be the normal sentence, with records sealed on completion of the term. G. L. c. 94C, § 34, as amended through St. 1975, c. 369. The medical, social, and law enforcement aspects of marihuana have been and can be studied by the General Court with an intensity and a breadth no court can readily approximate. See 1972 Mass. House Doc. No. 5896, cited above. It is for that branch of government to decide, perhaps at the plaintiffs' urging, whether the present statute attains to the best solution.[12]

*Judgment affirmed.*

---

[12] In the legislative forum, the plaintiffs could show that a growing number of States have removed personal possession from the felony category and now regard it as a minor offense. See, e.g., Colo. Rev. Stat. § 12-22-412 (12) (a) (Cum. Supp. 1976); 1977 N.Y. Laws c. 360 (Marihuana Reform Act of 1977). Further, there is advocacy of withdrawing all criminal sanctions from possession for personal use and from distribution of small amounts not for profit. Among the groups urging such decriminalization are the American Bar Association (ABA Summary of Action Taken by the House of Delegates, 1973, at 12-13), the National Commission on Marihuana and Drug Abuse (Marihuana: A Signal of Misunderstanding [Official Report, 1972]), and the National Conference of Commissioners on Uniform State Laws (Handbook of 1973 Proceedings at 186-187). See also Final Report of the Canadian Commission of Inquiry into the Non-Medical Use of Drugs (1970).