SHELL OIL COMPANY *vs.* CITY OF REVERE.

Middlesex. February 4, 1981. — June 4, 1981.

Present: HENNESSEY, C.J., BRAUCHER, WILKINS, LIACOS, & ABRAMS, JJ.

*Municipal Corporations,* By-laws and ordinances. *Gasoline Stations,* Self-service. *Constitutional Law,* Equal protection of laws, Police power. *Due Process of Law,* Regulation of economic activity. *Practice, Civil,* Master, Declaratory proceeding. *Attorney General.*

This court expressed its views with respect to the constitutionality of a city ordinance banning self-service gasoline stations even though the Attorney General had not been notified of the action as required by G. L. c. 231A, § 8. [684-685]

A city ordinance banning self-service gasoline stations bore a reasonable relation to permissible objectives of legislation, including the protection of public health or safety, and, therefore, constituted a valid exercise of the city's police power; the ordinance was not rendered unconstitutional merely because there was evidence suggesting that such stations may be as safe as, or safer than, conventional stations. [685-690]

A city ordinance banning self-service gasoline stations, while allowing the operation of conventional stations, did not arbitrarily discriminate against the operators of self-service stations in violation of the equal protection guarantees of the State and Federal Constitutions. [690]

A city ordinance banning self-service gasoline stations, while allowing the operation of conventional stations, did not unreasonably prevent an oil company from engaging in otherwise lawful business. [690-691]

The application of a city ordinance banning self-service gasoline stations to an oil company proposing to open such a station was not invalid on the ground that there were three other such stations already operating in the city. [691]

It is not appropriate for a judge to refer a case to a master if the underlying controversy is of widespread public interest involving the official acts of elected officials. [691]

CIVIL ACTION commenced in the Superior Court on August 11, 1977.

The case was heard by *Young, J.*, on a master's report.

The Supreme Judicial Court granted a request for direct appellate review.

*Ira H. Zaleznik* for the defendant.

*Charles E. Schaub, Jr.* (*Steven A. Remsberg* with him) for the plaintiff.

ABRAMS, J. At issue is the constitutionality of an ordinance[1] of the city of Revere banning self-service gasoline stations in that city. The plaintiff Shell Oil Company (Shell) sought a declaration that "the proposed operation of Plaintiff's self-service gasoline station is not hazardous or injurious to the public," and that the ordinance is "invalid" under the equal protection clause[2] of the Fourteenth Amendment to the United States Constitution and under arts. 1, 7, and 10 of the Massachusetts Declaration of Rights. The city's answer denies that the ordinance is unconstitutional and asserts that the ordinance was passed to protect the public from hazards which exist in operating self-service stations. The action was referred to a master, who found self-service stations to be generally as safe as conventional stations, and safer than conventional stations as regards the incidence of fire. The master concluded that by exercising its police power to ban self-service stations while allowing conventional stations to operate, the city unjustly discriminated against self-service stations in violation of the Fourteenth Amendment to the United States Constitution.

Shell moved for confirmation of the master's report and for judgment in its favor. The city then filed alternative

---

[1] Chapter 7, Section 7-25, of the Revised Ordinances of the City of Revere was amended, in pertinent part, by the addition of the following: "SEC. 1- . . . [N]o license for a self-service gasoline station shall be granted which would allow the pumping of gasoline for retail sale without an attendant present to hold the gas nozzle while gasoline is being pumped into the tank."

[2] During the proceedings, the parties stipulated that the "sole issue in this lawsuit is whether or not the ordinance . . . prohibiting self-service gasoline stations violates the due process [or] equal protection guarantees of the Federal and State Constitutions and whether such ordinance is a proper exercise of the municipal police power."

motions to strike portions of the report or to recommit the matter to the master, and to confirm the master's report less the stricken material, and enter judgment in its favor.

Without ruling on the motions, the judge below filed a memorandum of decision rejecting the city's attack on the subsidiary findings of the master, and adopting the conclusion of the master that self-service stations are as safe if not safer than conventional full-service stations with respect to the threat of fire. The judge concluded, however, that the city council's possible objectives in enacting the ordinance could not fairly be limited to the goal of protecting the public from safety hazards connected with self-service operation, and that the plaintiff had not met its onerous burden of disproving the existence of any possible rational basis for the ordinance. Therefore, the judge ruled that the ordinance was a constitutionally valid exercise of the city's police power, and judgment was entered accordingly.[3] Shell appealed. We granted Shell's application for direct appellate review. We uphold the constitutionality of the ordinance and conclude that the declaration should be modified to state that the ordinance bears a reasonable relation to permissible objects of legislation, including the protection of public health or safety.

At the outset, there is a question concerning the propriety of judicial review in this case. General Laws, c. 231A, § 8, requires that "[i]f a question of constitutionality is involved in any proceeding under this chapter, the attorney general shall also be notified of the proceeding and be entitled to be heard." Such notice and opportunity to be heard are "conditions precedent to the entry of a declaratory decree." *Court St. Parking Co.* v. *Boston*, 336 Mass. 224, 226 (1957). Such notice is required so the interests of the Commonwealth may be considered in a constitutional attack on

---

[3] We treat the defendant's motions to strike and to recommit as having been impliedly denied. See, e.g., *Ryan* v. *Stavros*, 348 Mass. 251, 253 (1964). The city appealed from the denial of its motions. Since we conclude that the ordinance is valid, we do not reach the city's appeal.

a statute or an ordinance. The record does not indicate that notice was given to the Attorney General. However, the Attorney General is not a necessary party to such a proceeding. See *Lowell* v. *Boston*, 322 Mass. 709, 741 (1948). Further, on one occasion the Attorney General conceded that "a zoning by-law could exclude self-service gas stations in a particular zone or throughout the town." *Milton* v. *Attorney Gen.*, 372 Mass. 694, 696 (1977).[4]

Moreover, the determination of constitutionality[5] by the judge is consistent with the views expressed by the Attorney General in cases raising similar challenges to this type of economic legislation. See, e.g., *Purity Supreme, Inc.* v. *Attorney Gen.*, 380 Mass. 762, 778-779 (1980); *Mobil Oil Corp.* v. *Attorney Gen.*, 361 Mass. 401, 402 (1972). See also *Blue Hills Cemetery, Inc.* v. *Board of Registration in Embalming & Funeral Directing*, 379 Mass. 368 (1979). In these circumstances, since the issue is a matter of concern to numerous cities and towns, we think we should state our views on the merits which have been fully briefed and argued. *Wellesley College* v. *Attorney Gen.*, 313 Mass. 722, 731 (1943).

In essence, Shell argues that the ordinance should be judged only in light of the goal of public safety.[6] Although Shell acknowledges the validity of this goal, it argues that the evidence before the master amply supported his conclusion that self-service stations are as safe as full-service stations, and that the ordinance, therefore, bears no rational relationship to the promotion of public safety, health or general welfare. Shell also argues that the city is enforcing the ordinance in a discriminatory fashion, and requests a

---

[4] The ordinance at issue is similar to the one challenged in *Milton* v. *Attorney Gen.*, 372 Mass. 694, 694 n.1 (1977).

[5] We need not decide what result would have been appropriate had the judge declared the ordinance unconstitutional.

[6] Although Shell seeks to limit the issue to public safety, "the validity of the legislation [is] to be tested in the first place by inquiring whether it [bears] a reasonable relation to any permissible object of legislation." *Marcoux* v. *Attorney Gen.*, 375 Mass. 63, 64 (1978).

declaration that the ordinance be declared "an invalid and unconstitutional exercise of the municipal police power."

Our task in considering constitutional challenges to legislation affecting economic issues is "both limited and clear: we must determine whether [the ordinance] represents a valid exercise of the police power. And we must do so by assessing the rationality of the connection between the legislative means adopted in [the ordinance] and those permissible public ends the [legislative body] may plausibly be said to have been pursuing." *Blue Hills Cemetery, Inc.* v. *Board of Registration in Embalming & Funeral Directing,* 379 Mass. 368, 372 (1979). If a statute or ordinance serves a legitimate purpose, and if the means the State adopted are rationally related to the achievement of that purpose, the legislation will withstand constitutional challenge.[7] Thus, one challenging this type of legislative enactment has the task of overcoming a strong presumption of constitutionality. *Blue Hills Cemetery, Inc.* v. *Board of Registration in Embalming & Funeral Directing, supra* at 371. *Marcoux* v. *Attorney Gen.,* 375 Mass. 63 (1978). *American Mfrs. Mut. Ins. Co.* v. *Commissioner of Ins.,* 374 Mass. 181, 190 (1978). *Pinnick* v. *Cleary,* 360 Mass. 1 (1971). *Commonwealth* v. *Leis,* 355 Mass. 189, 200 (1969) (Kirk, J., concurring).

---

[7] We have noted that "[t]he Constitution of a State may guard more jealously against the exercise of the State's police power." See *Coffee-Rich, Inc.* v. *Commissioner of Pub. Health,* 348 Mass. 414, 421 (1965). The difference between the two Constitutions "in the area of economic regulation, however, is narrow." *Blue Hills Cemetery, Inc.* v. *Board of Registration in Embalming & Funeral Directing,* 379 Mass. 368, 373 n.8 (1979). See generally Wilkins, Judicial Treatment of the Massachusetts Declaration of Rights in Relation to Cognate Provisions of the United States Constitution, 14 Suffolk U.L. Rev. 887, 914-917 (1980). "For the reasons set out, *infra,* we have little difficulty in concluding that [this ordinance] sufficiently furthers plausible legislative objectives through the adoption of means sufficiently closely related to the attainment of these ends to satisfy both State and Federal constitutional standards." *Blue Hills Cemetery, Inc., supra* at 373 n.8. Thus we discuss the Federal and State constitutional issues simultaneously. See *Pinnick* v. *Cleary,* 360 Mass. 1, 14 n.8 (1971). Cf. *Coffee-Rich, Inc., supra.*

A statute or ordinance is not rendered unconstitutional merely because the evidence of record suggests that the "ultimate efficacy" of achieving the statutory purpose is in question,[8] or that the means to achieve the statutory end is rough, illogical or not the best available,[9] or that the means stated in the statute is not perfectly consistent with the desired result.[10] The success of the Legislature's choice need not be guaranteed.

Our deference to legislative judgments reflects neither an abdication of nor unwillingness to perform the judicial role; but rather a recognition of the separation of powers and the "undesirability of the judiciary substituting its notions of correct policy for that of a popularly elected Legislature." *Zayre Corp.* v. *Attorney Gen.*, 372 Mass. 423, 433 (1977). Thus, it is not the court's function to launch an inquiry to resolve a debate which has already been settled in the legislative forum. "[I]t [is] the judge's duty . . . to give effect to the will of the people as expressed in the statute by their representative body. It is in this way . . . that the doctrine of separation of powers is given meaning." *Commonwealth* v. *Leis*, 355 Mass. 189, 202 (1969) (Kirk, J., concurring).

This respect for the legislative process means that it is not the province of the court to sit and weigh conflicting evidence supporting or opposing a legislative enactment. *Clark* v. *Paul Gray, Inc.*, 306 U.S. 583, 594 (1939). Most laws dealing with economic and social problems are "matters of trial and error. That which before trial appears to be demonstrably bad may belie prophecy in actual operation. It may not prove good, but it may prove innocuous. But

---

[8] *Exxon Corp.* v. *Governor of Md.*, 437 U.S. 117 (1978) (whether a proscription on oil producers and refiners owning gasoline stations would really foster sales competition).

[9] *Dandridge* v. *Williams*, 397 U.S. 471 (1970) (whether a $250 ceiling a family in AFDC payments was permissible regardless of family size or need).

[10] *Williamson* v. *Lee Optical of Okla., Inc.*, 348 U.S. 483 (1955) (whether a regulation on eye care in fact contributed to public health).

even if a law is found wanting on trial, it is better that its defects should be demonstrated and removed than that the law should be aborted by judicial fiat. Such an assertion of judicial power deflects responsibility from those on whom in a democratic society it ultimately rests — the people." *American Fed'n of Labor* v. *American Sash & Door Co.*, 335 U.S. 538, 553 (1949) (Frankfurter, J., concurring).

Once the Legislature has drawn a classification, "neither the finding of a court arrived at by weighing the evidence, nor the verdict of a jury can be substituted for it." *United States* v. *Carolene Prods. Co.*, 304 U.S. 144, 154 (1938). Although persons challenging the constitutionality of legislation may introduce evidence in support of their claim that the legislation is irrational,[11] *United States* v. *Carolene Prods. Co.*, *supra* at 153-154, they will not prevail if "the question is at least debatable" in view of the evidence which may have been available to the Legislature. *Id.* at 154. "[I]t is the very admission that the facts are arguable that immunizes from constitutional attack the congressional judgment represented by this statute." *Vance* v. *Bradley*, 440 U.S. 93, 112 (1979). *Henderson Co.* v. *Thompson*, 300 U.S. 258, 264-265 (1937). *Radice* v. *New York*, 264 U.S. 292, 294 (1924). *Commonwealth* v. *Leis, supra* at 202 (Kirk, J., concurring). In sum, legislative bodies "are not required to convince the courts of the correctness of their legislative judgments." *Minnesota* v. *Clover Leaf Creamery Co.*, 449 U.S. 456, 464 (1981).

Shell does not challenge the connection between the prohibition of consumer dispensing of gasoline, an admittedly dangerous substance, and the goal of public safety; instead Shell disputes the need for a regulation banning self-service

---

[11] The city has not challenged the scope of the hearing below, and we express no views on whether the judge could have granted summary judgment, see *Commonwealth* v. *Leis*, 355 Mass. 189, 202 (1969) (Kirk, J., concurring), or granted a motion to dismiss, see *Marcoux* v. *Attorney Gen.*, 375 Mass. 63, 64 (1978), rather than have a protracted hearing. See also *Minnesota* v. *Clover Leaf Creamery Co.*, 449 U.S. 456, 464 n.8 (1981).

stations, given the relative safety records of those stations and conventional ones. That issue, however, was for the city council. It alone had the authority to determine that hazards such as customer disregard of the rules regarding smoking, turning off engines and placing gasoline in dangerous containers are likely to occur with more frequency at self-service stations than at full-service stations. The city could decide that to permit only employees of gasoline stations to dispense gasoline would reduce the likelihood of accidents. Whether the ordinance was a response to actual instances of customer misuse or an attempt to forestall such problems, it cannot be said that the regulation in question bears no rational connection to the legislative purpose. See *Jewel Cos.* v. *Burlington*, 365 Mass. 274, 279 (1974).[12] The weight of the evidence was for the Legislature, not the courts.[13]

Further, the city's possible purposes in enacting the ordinance cannot be restricted to considerations of public safety. See *Marcoux* v. *Attorney Gen.*, 375 Mass. 63, 64 (1978). The city may rationally have concluded that if the large gasoline suppliers switched increasingly to self-service stations in order to maximize profits, citizens would be adversely

---

[12] While the record in the instant case fails to disclose any fire incident attributable to self-service stations, we note that a similar ordinance, upheld against constitutional attack, had been enacted after a flash fire occurred as a result of a customer's smoking while he was dispensing gasoline. *Hi-Lo Oil Co.* v. *Crowley*, 274 So. 2d 757 (La. App. 1973). See *Hurd* v. *Munfort, Inc.*, 378 So. 2d 86 (Fla. 1979) (customer pumped gasoline into improper container, resulting in fire at home). Moreover, the city was not required to set forth incidents of abuse. Once a rational relation is shown the court may not go further and require the city to prove actual abuse. *Commonwealth* v. *Leis*, 355 Mass. 189, 192 (1969).

[13] The plaintiff relies on our language in *Sturges* v. *Chilmark*, 380 Mass. 246, 257 (1980), which stated that a "showing must be made, on the record, that there was a reasonable basis for the enactment." Shell reads this sentence out of context and claims that it means the city must justify its ordinance in light of Shell's evidence as to the relative safety of self-service stations. Contrary to Shell's assertion, that portion of *Sturges* merely requires the record to reflect a reasonable or permissible basis for the legislative enactment. *Id.* at 825. Compare *Coffee-Rich, Inc.* v. *Commissioner of Pub. Health*, 348 Mass. 414 (1965).

affected by the loss of gasoline station attendants and mechanics, and by the concomitant loss of routine automobile maintenance services usually provided at full-service stations. See, e.g., *Midwest Petroleum Marketers Ass'n* v. *Chicago*, 82 Ill. App. 3d 494 (1980) (requirement that self-service stations also maintain a full-service island is rationally related to purpose of providing service to the elderly and handicapped). The ordinance in question may reflect the city's unwillingness to leave with the gasoline companies the decision of what services are to be offered the citizens of Revere.

Shell also claims that by banning self-service stations, while allowing the operation of conventional stations, the ordinance arbitrarily discriminates against self-service gasoline stations in violation of the equal protection guaranties of the State and Federal Constitutions. Under an equal protection analysis, we must determine "whether the classification involved rationally 'furthers a legitimate State interest.'" *Johnson* v. *Martignetti*, 374 Mass. 784, 791 (1978), quoting from *Opinion of the Justices*, 368 Mass. 857, 865 (1975). For the reasons discussed, *supra*, we conclude that this "classification" is "rationally related to legitimate [legislative] ends and therefore as valid an exercise of the police power as the substantive prohibition itself." *Blue Hills Cemetery, Inc.* v. *Board of Registration in Embalming & Funeral Directing*, 379 Mass. 368, 376 (1979).

Shell asserts that self-service stations are a business distinct from that of a conventional, full-service gasoline station, and, therefore, the ordinance unreasonably prevents it from engaging in an otherwise lawful business. We do not agree. This same argument was advanced in *Hi-Lo Oil Co.* v. *Crowley*, 274 So. 2d 757, 764 (La. App. 1973), and was rejected. The ordinance in question regulates only the dispensing of gasoline; it does not prohibit Shell from selling gasoline. "[W]ell established in our law is the principle that one cannot operate his business . . . in any manner he sees fit, that he is subject to reasonable regulations established to govern the operation and conduct of the particular

business." *Mobil Oil Corp.* v. *Attorney Gen.*, 361 Mass. 401, 413 (1972). *Slome* v. *Chief of Police of Fitchburg*, 304 Mass. 187 (1939).

Shell also argues that, since three self-service stations are already operating in Revere, the application of the ordinance to its station is invalid. We disagree. It is settled that a "State [is] not bound to deal alike with all . . . classes, or to strike at all evils at the same time or in the same way." *Semlar* v. *Oregon St. Bd. of Dental Examiners*, 294 U.S. 608, 610 (1935). A "gradual approach to the problem is not constitutionally impermissible." *New Orleans* v. *Dukes*, 427 U.S. 297, 305 (1976). The Supreme Court has upheld a prohibition against some, but not all, push cart food vendors, *New Orleans* v. *Dukes, supra* at 305-306; a partial ban on vehicular advertising, *Railway Express Agency, Inc.* v. *New York*, 336 U.S. 106, 110 (1949); and a regulation covering some but not all eyeglass sellers, *Williamson* v. *Lee Optical of Okla., Inc.*, 348 U.S. 483, 489 (1955). To the extent Shell's claim is that the ordinance is being discriminatorily enforced against it and in favor of its competitors that claim is not before us. Neither the master nor the court below ruled on this contention and therefore we decline to consider the issue.

Finally, a judge, not the judge who declared the statute constitutional, referred this matter to a master on a motion of the plaintiff. We believe that it is not appropriate for a judge to refer cases to a master if the underlying controversy is of widespread public interest involving the official acts of elected officials. Confidence in the judgments of the judiciary requires that in the absence of unusual circumstances the courts should hear and decide constitutional issues involving legislative action. In such cases there "is an impelling reason for a trial before an experienced judge," *Bartlett-Collins Co.* v. *Surinam Navigation Co.*, 381 F.2d 546, 551 (10th Cir. 1967); and the decision to refer such cases to masters "should be exercised most discriminately and reasonably sparingly," *O'Brien* v. *Dwight*, 363 Mass. 256, 280 (1973).

The judgment of the Superior Court is modified to declare that the ordinance is rationally related to permissible legislative objectives including public safety; and, as modified, it is affirmed.

*So ordered.*