THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CATHERINE BRISCO *et al.*, Defendants-Appellants.

First District (4th Division)   Nos. 78-1412, 78-1749 cons.

Opinion filed November 8, 1979.

James J. Doherty, Public Defender, of Chicago (Robert P. Isaacson, Assistant Public Defender, of counsel), for appellants.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Myra J. Brown, and Bruce W. Lester, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

Following a trial without a jury in the circuit court of Cook County, the defendants, Catherine Brisco and George Jordan, were found guilty of possession of cannabis (Ill. Rev. Stat. 1975, ch. 56½, par. 704) and sentenced to one year felony probation. The defendants' arrests were unrelated but were consolidated for trial and appeal. The facts incident to their arrests have no bearing on the appeal issues and will not be related herein. On appeal they argue the two laboratory tests which were performed on the seized substances did not satisfy the prosecution's burden of proving beyond a reasonable doubt that they were cannabis. They also argue that the State's failure to purify the substances created a reasonable doubt that the substances were cannabis by nullifying whatever value the laboratory tests possessed. Finally, they argue the statute which prohibits possession of cannabis is unconstitutional on various bases.

The defendants filed pretrial motions urging that the cannabis statute be declared unconstitutional. The motions were denied. At trial, the parties stipulated to the chain of custody of the substances seized from each defendant. Gerald Pazin testified for the State. He is a forensic chemist for the Chicago Police Department and had been so employed for more than 3½ years at the time of trial. Pazin has a bachelor's degree in chemistry and has been trained in the analysis of narcotic substances. He has conducted 5 to 6 thousand tests on substances suspected of being narcotics. He belongs to various chemical and forensic professional societies, and has read numerous journals, periodicals and papers dealing with the scientific analysis of drugs.

At the Chicago Crime Laboratory the tests performed on suspect cannabis are the Duquenois-Levine test and microscopic analysis of the plant. In the Duquenois-Levine test, a portion of the substance is put in a spot plate and the Duquenois reagent is added to the substance. A hydrocholoric acid concentrate is added to this mixture, and a violet color is produced if the test is positive for cannabis. Some of this liquid is then placed in a test tube and chloroform is added. This is the Levine modification of the Duquenois test. The violet liquid is soluble in the chloroform if the test is positive for cannabis. A Duquenois reagent consists of acetaldehyde, vanillin and ethyl alcohol. There are substances

other than cannabis which will give a positive reaction on the Duquenois test alone. It is also possible that there are substances which will give a positive reaction on both the Duquenois and the Levine modification other than cannabis. For example, coffee and oregano give a partial positive result. Following the Duquenois-Levine test, a microscopic examination is made of the plant. A portion of the plant is placed on a slide and examined under a microscope. The tester looks for the cystolith tree cone, which is the stone of calcium carbonate at the base of the hair. Once the tree cone is located and identified, an acid is added and a positive cannabis result occurs if there is effervescence emerging from the base of the hair. Pazin testified that he knows of no substance other than Cannabis sativa which gives a positive reaction to both the Duquenois with the Levine modification and the microscopic examination.

Pazin testified that the results of the tests performed on the substances seized from the defendants indicated to him that they were Cannabis sativa.

On cross-examination Pazin testified that he has not taken any courses in botany or pharmacognosy or in drug assay or in the characterization of organic drug compounds. He said he has been trained in the use of the spectroscopy. He did not use the spectroscopy in analyzing the substances seized from the defendants. He has not written or published any articles on the identification of cannabis.

Pazin said he does not purify samples of seized substances before testing them. He admitted that he does not know anything about the origin of the samples, where they were grown, or under what conditions. He agreed it would be important to know if there were an adulterant present which produced a positive reaction, but said that to his knowledge there is no substance other than cannabis which would give a positive result on all the tests.

Pazin also testified that he did not use a thin layer chromatography, gas chromatography, Rubkert's identification test, a high or low resolution mass spectroscopy or an ultra-violet spectroscopy in testing the seized substances. The Chicago Police Department has the necessary equipment to do thin layer chromatography, ultra-violet and gas chromatography.

Pazin said a screening test is used as a preliminary test to narrow the field of possible substances. He said the Duquenois-Levine test might be referred to as a screening test but when it is used in conjunction with the microscopic analysis it produces a specific testing procedure.

Pazin said he did not use a spectrophotometer when he did the Duquenois-Levine test on the seized substances. The spectrophotometer passes a beam of light through the sample and gives a reading concerning the absorbance of light at specific wave lengths. The reagent solution

which is used to test the seized substances is not checked with a mass spectrometer or ultraviolet spectroscopy or independent chemical analysis.

Concerning the microscopic analysis, Pazin testified that there are other plants which have cystolith tree cones, such as hops, nettles, mulberry, elm, lavender, oregano, mint and tobacco. He has never run the Duquenois-Levine test on these various plants. On redirect, Pazin testified that it is only when a microscopic examination cannot be done that a thin layer chromatography or some other type of testing should be done.

Marc Kurzman testified for the defense. He is a professor at the University of Minnesota and directs the Office of Alcohol and Other Drug Abuse Programming. He has a bachelor's degree in pharmacy and a law degree and is one course short of a master's degree in law. He takes continuing pharmacy courses. He is licensed to practice both pharmacy and law in Minnesota, New York, the United States Patent and Trademark Court, and many Federal jurisdictions. During the past five years he has taught approximately 20 courses in advanced forensic analysis to doctoral candidates. He has also taught courses in the study and misuse of drugs, psychology, psychiatry, pharmacy and public health and also legal courses. He has written two books for the Drug Enforcement Administration and one for the West Publishing Company. He has published 15 or 20 articles and has presented papers at a number of conferences on the subject of cannabis identification. He is a member of a number of professional organizations.

Kurzman testified that it is important to purify a seized substance before testing it if a screening test rather than an identification test is being utilized. A screening test is a general term for a test which will help narrow the field. An identification test has only one given response for one particular substance. Use of a mass spectrophotometer would give a result which no other substance would give and allows one to say with certainty that it is a particular substance. A screening test could be anywhere from 5 to 95 percent accurate. The Duquenois-Levine is a screening test.

Kurzman testified that in the late 1960's and early 1970's scientists began to notice that a number of substances other than cannabis were passing both phases of the Duquenois-Levine test. The chemical substance which produces a positive Duquenois test is a simple chemical structure called resorcinol.

A blue-violet or purple-violet color indicates a positive reaction in the Duquenois test. Substances other than cannabis which will give a positive reaction to the Duquenois-Levine test include Sucrets, many commercial

brands of coffee, nettle, and a number of oils, such as camphor oil and patchuolia. Hundreds, if not thousands, of different commercial substances will pass the Duquenois-Levine test. It is a very useful screening test but it is not a test of identification. It would approach the reliability of an identification test if used in conjunction with a visible spectrophotometer.

The microscopic cystolith carbon dioxide bubble test is also a screening test. Cystolith hairs are found in thousands of plants. However, cystolith hairs with the same appearance as cannabis are more limited. Cannabis cystolith hairs not only contain calcium carbonate but they also form a shape called bear-claw which looks like a teardrop lying on its side. The bear-claw cystolith hair is also common throughout the plant kingdom. In an article by Dr. Nakamura, 600 plants were examined and eighty had cystolith hairs similar in appearance to those of cannabis. The 600 examined represent only 1/1000th of those in the class of dicotyledons.

Kurzman also said it is necessary to look for the presence of the cystolith hair, the sessile hair and the stalked glandular hair and to examine their relationship to each other. If all three hairs are located, the identification of the substance has been narrowed down to 11 families containing about 500 different plants. There is more than one plant which will pass the test for the presence of cystolith hairs and will also give a positive reaction to the Duquenois-Levine test. One could not say with any degree of scientific certainty that a substance showing positive on both the Duquenois-Levine and the carbon dioxide bubble test is cannabis.

Tests which could be used to supplement the Duquenois-Levine and microscopic examination in order to specifically identify a substance as cannabis include thin layer chromatograph, infra-red spectrophotometer and the gas chromatograph-mass spectrometer. If a substance passed both the Duquenois-Levine and microscopic tests one could say with only a 5% certainty that it was cannabis.

On cross-examination, Kurzman testified that all his expert testimony in various cases has been given on behalf of the defense. He has not examined the evidence in either of the defendants' cases.

Kurzman also testified that in a study done by the Bureau of Narcotics and Dangerous Drugs in 1968, samples which had previously been identified as cannabis were collected from State and Federal forensic laboratories. It was found that up to 20% were not in fact cannabis.

The defendants argue there is no scientific basis for concluding that cannabis is the only substance which will pass both the Duquenois-Levine and microscopic analysis. This is not a correct statement of the issue

before us. The State's burden was to prove beyond a reasonable doubt that the seized substances were cannabis. (*People v. Park* (1978), 72 Ill. 2d 203, 380 N.E.2d 795.) The State's evidence on this element of the crime consisted of Pazin's testimony. He stated that he performed the Duquenois-Levine and microscopic tests on the substances and that he observed positive reactions to both tests. He also said he knew of no substance other than cannabis which would evoke positive reactions to both tests. Kurzman, the defendants' expert, testified that the Duquenois-Levine and microscopic analysis are merely screening devices and that there are other substances which could give a positive result to both tests.

The weight to be given particular evidence and considerations pertaining to the credibility of witnesses are matters peculiarly within the province of the trier of fact; in this case, the trial judge. (*People v. Nitti* (1956), 8 Ill. 2d 136, 133 N.E.2d 12.) The decision of the fact-finder who saw and heard the witnesses will not be disturbed unless the reviewing court determines that the decision is against the manifest weight of the evidence. *People v. Horton* (1975), 29 Ill. App. 3d 704, 331 N.E.2d 104. ■■ The trial court's conclusion that the Duquenois-Levine test when used in conjunction with microscopic analysis was sufficient to prove beyond a reasonable doubt that the seized substances were cannabis was supported by Pazin's testimony. The absence of a purification process does not appear to detract from Pazin's conclusion that the substances were cannabis because the trial court had a right to believe Pazin's opinion that no substance other than cannabis will produce a postive reaction to both the tests.

The defendants next argue the trial court erred in finding that the Cannabis Control Act (Ill. Rev. Stat. 1975, ch. 56½, par. 701 *et seq.*) is constitutional. They argue that it violates their constitutional rights to privacy and equal protection under both the Illinois and Federal constitutions.

■ As the defendants have noted, these constitutional issues concerning the State's power to make the possession of cannabis illegal, were ruled on by this court in *Illinois NORML, Inc. v. Scott* (1978), 66 Ill. App. 3d 633, 383 N.E.2d 1330. The *NORML* court rejected each of the arguments. We adhere to our previous decision.

For the foregoing reasons the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

JOHNSON and ROMITI, JJ., concur.